MELISSA L. BERRY AND J. H. BERRY, HER HUSBAND, v. THE CITY OF DURHAM.

(Filed 7 November, 1923.)

**1. Municipal Corporations—Cities and Towns—Corporate Limits—Ultra Vires Acts.**

Ordinarily, a city or town government, without legislative authority, has no power to acquire lands outside of its corporate limits for public purposes, or maintain or improve the same, and it is not responsible in damages for injury to lands of the private owner, done by its agents and employees while engaged in enterprises of this *ultra vires* character, though undertaken for the benefit of the public.

**2. Same—Statutes.**

Under the provisions of our general statutes, a city or town is given authority to acquire and maintain parks for the use of its citizens beyond its corporate limits, and to provide suitable streets or ways of access thereto for the purpose. C. S., sec. 2787 (1), (2), (11), (12); also secs. 2791, 2792, 2793, 2786.

**3. Same—Conflicting Statutes—Local Laws.**

The general statutes giving power to cities and towns to acquire parks for its citizens outside of the corporate limits, and provide access for the public thereto, prevail whenever and to the extent there is no irreconcilable repugnancy with special charter provisions on the same subject.

**4. Same.**

The city of Durham has legislative authority under the provisions of the general statutes to acquire and maintain parks for the public use, outside of its corporate limits, and to acquire and open up adequate and proper ways or streets thereto, and grade and improve the same. (C. S., sec. 2793.)

**5. Same—Parks—Access—Streets—Condemnation.**

Where a city or town has statutory authority to acquire a park for a public use outside of the corporate limits, it necessarily follows that the right is given to open up and maintain a right of way thereto, by condemnation or in other ways recognized by law.

**6. Same—Negligence—Damages.**

Where a city or town has been given the statutory power to acquire and maintain a public park beyond its corporate limits, and the necessary ways of access thereto, it is liable for the negligent wrongs and injuries committed by its employees and agents in the course of the work.

**7. Constitutional Law—Race Discrimination—Public Parks.**

Reasonable regulations may be made as to city parks for the white race, looking to the separation of the races, with the limitation that there shall be equal facilities afforded to both races according to their needs and requirements, without violating the constitutional requirements on the subject of race legislation; and where a city has accepted a dedication of lands for the purpose of a park for the white race, it is within the constitutional bounds for the governing municipal authorities to determine the equality of like places for the colored race; and an exception of race discrimination in this respect is untenable, unless it is made to appear that such authorities had violated the constitutional inhibition.

**8. Same—Title—Fee Simple—Repugnancy.**

*Semble,* a city or town that had accepted the dedication of a public park in violation of the constitutional inhibition against race discrimination may disregard the unconstitutional qualification annexed as a condition to the fee simple in the lands.

APPEAL by defendant from *Lyon, J.,* at April Term, 1923, of DURHAM. Civil action, to recover damages for wrongful injury to property.

There were allegations of complaint setting forth the wrong and injury, and facts in evidence on the part of plaintiff tending to show that in April, 1917, W. G. Vickers proposed to the board of aldermen to donate and convey to the city a small tract of land lying a short distance beyond the corporate limits, for a park and playground purposes for the white people of the city of Durham, on condition that the city add to it 19½ acres of land for said purposes, and open and improve certain

streets—among others, Cobb Street, leading from Vickers Avenue in said city to said park and grounds. That the proposition was formally and fully accepted by the city, the park opened, and thereupon the city, through its agents and employees, entered on the work of grading and improving the said Cobb Street and others, as stipulated, part of same being within the city and part beyond the city limits, as stated. That plaintiffs owned a lot abutting on Cobb Street, just outside the city, and defendants, its agents and employees, in working on the extension of Cobb Street, had wrongfully removed a lot of surface soil from plaintiff's lot for purposes of making an embankment along said street, part of same being within the city, and had otherwise done the work so negligently in the portion of said street immediately in front of plaintiff's lot as to cause extended damage to same.

There was a general denial on the part of defendant of any and all negligence, defendants insisting further that the agents and employees of the city, engaged in the work of improving Cobb Street beyond the city limits, were acting *ultra vires,* and that the city was in no way liable for any injuries they may have caused. And, again, that the city authorities were without power to accept a deed for park purposes for the white people of Durham, there being power to acquire parks, if at all, for all the inhabitants, etc.

On issues submitted, the jury rendered verdict for plaintiff, assessing the damage, judgment on the verdict, and defendant excepted and appealed, assigning for error chiefly that the acts complained of were *ultra vires,* and the city, therefore, in no way responsible—first, because the street in question was beyond the city limits; second, the authorities were without power to accept and maintain a park and playground for the "white people of the city."

*Brogden, Reade & Bryant for plaintiff.*
*S. C. Chambers for defendant.*

HOKE, J. Ordinarily, and in the absence of legislative sanction, a city or town government is without power to enter on improvements of this character outside of the corporate limits, and for wrongs done by its agents and employees while engaged in such an enterprise the corporation itself may not be held liable. *Love v. City of Raleigh,* 116 N. C., 296; 7th McQuillan Municipal Corporations, sec. 1824.

In the citation to McQuillan it is said: "The general rule is, that, without legislative grant, the authority of the municipal corporation is confined to its own area; hence its acts and ordinances have no force beyond its corporate limits. Thus, in the absence of such grant, the

municipality cannot open a street, or repair a highway, grade an avenue, or aid in the construction of a plank-road or bridge beyond its boundaries."

And in·*Love v. Raleigh, supra,* it is held, among other things: "That if an act complained of lies wholly outside of the general or special powers of a municipal corporation, the corporation is not liable in damages for such act, whether done by its express command or not."

In full recognition of the validity and binding effect of the principles as stated, they cannot avail the appellant in the instant case, for the reason that in our opinion there is ample legislative authority for the present improvement on the part of the city, both as to the acquirement and maintenance of the park in question and the improvement of proper rights of way leading thereto from the city. In C. S., ch. 56, sec. 2787, cities are empowered, among other things:

"Subsection 1. To acquire property in fee simple or a lesser interest or estate therein, by purchase, gift, devise, bequest, appropriation, lease, or lease with privilege to purchase.

"Subsection 2. To sell, lease, hold, manage, and control such property and make all rules and regulations, by ordinance or resolution, which may be required to carry out fully the provisions of any conveyance, deed, or will in relation to any gift or bequest, or the provisions of any lease by which the city may acquire property.

"Subsection 11. To open new streets, change, widen, extend, and close any street that is now or may hereafter be opened, and adopt such ordinances for the regulation and use of the streets, squares, and parks, and other public property belonging to the city, as it may deem best for the public welfare of the citizens of the city.

"Subsection 12. To acquire, lay out, establish, and regulate parks within or without the corporate limits of the city for the use of the inhabitants of the same."

Again, in section 2791 of same chapter, the governing authorities are empowered to·acquire for the "benefit of the city" any land, right of way, water right, privilege or easement, either within or without the city, which shall be necessary for the purpose of opening, establishing, building, widening, extending, enlarging, or maintaining or operating any such streets, parks, playgrounds, etc.

In section 2792, power of condemnation is conferred where the property necessary cannot be otherwise acquired. And in section 2793 full authority is given the city government to control, grade, macadamize, cleanse, pave and repair the streets and sidewalks of the city, etc., as they may deem best for the public good, etc. ·

In section 2786 it is provided that the powers herein conferred shall apply to all cities and towns, whether they have adopted a plan of gov-

ernment or not, and such powers are in addition and not in substitution of existing powers of cities and towns.

Interpreting the section, it has been held that these powers under the general statute shall prevail whenever and to the extent that there is no irreconcilable repugnancy with special charter provisions on the same subject (*Kinston v. R. R.*, 183 N. C., 14), and it will thus be seen that the city of Durham, as stated, has ample legislative authority to acquire and maintain the park, and to acquire and open up adequate and proper ways thereto, and, having acquired such ways, the same becoming streets of the city, these rights of way may be graded and improved as provided by section 2793.

And if it were otherwise—if, as defendant contends, this section (2793) can only be held to apply to streets within the city limits—the right to grade and improve would necessarily follow from the powers conferred in the preceding sections—to acquire and maintain a park, and to acquire, open up, and maintain a right of way thereto. It would be an idle thing to grant the right to maintain a park outside the city limits, and to acquire and maintain a right of way thereto, and deny to the city authorities the power to make the park accessible by proper approaches. It is held in *Dewey v. R. R.*, 142 N. C., 392, and approved in numerous other decisions on the subject, that where a power is given by statute, everything necessary or requisite to attain the end is inferred. And the right of condemnation being also expressly conferred (*Comrs. v. Bonner*, 153 N. C., 70), the power to grade and improve follows as a necessary incident to acquire and open up the right of way.

The city authorities, then, being well within their powers in the grading of the street, the city may be properly held liable for the negligent wrongs and injuries committed by its employees and agents in the course of the work, and this objection of appellant must be overruled. *Leary v. Comrs.*, 172 N. C., 25; *Harper v. Lenoir*, 152 N. C., 723.

Nor can the objection be sustained that the contract is void because the donation in question is for the purpose of maintaining "a public park for the white people of Durham," and not for the inhabitants of the city generally. Even if the purpose to maintain a park for white people should be disapproved as being against public policy or without the powers possessed by the city government, it would seem to be in the nature of a condition subsequent, and might in itself be disregarded and the donation allowed to stand, but in our opinion the stipulation is not void nor does it necessarily invalidate the gift. It is in full accord with our practice and public policy, emphasized and approved by legislation and judicial decision, that reasonable regulations may be made and enforced, looking to a separation of the races, with the limitation that

as to public and *quasi*-public enterprises and undertakings there shall be equal facilities afforded to either of the races according to their needs and requirements.

In the matter of schools, the principle has place in our organic law, the Constitution providing that "the children of the white and the colored races shall be taught in separate schools, but there shall be no discrimination in favor of or to the prejudice of either race." A wise and beneficent provision that has been insistently upheld by the courts, and is working satisfactorily to both races. *Galloway v. Board of Education,* 184 N. C., 245; *Puitt v. Comrs.,* 94 N. C., 709; *Bonitz v. School Trustees,* 154 N. C., 375; *Lowery v. School Trustees,* 140 N. C., 33.

The same principle in this jurisdiction is provided by statute and enforced by judicial decision in the matter of common carriers and agencies for the convenience of the public. *Huff v. R. R.,* 171 N. C., 203; *Westchester v. Miles,* 55 Pa. St., 209; *Hall v. McCuir,* 95 U. S., 485, particularly in the concurring opinion of *Associate Justice Clifford.*

And a like principle should undoubtedly prevail as to public parks, the statute in addition expressly providing, as stated, section 2787, subsection 2, "That cities shall have power to make all rules and regulations by ordinance or resolution required to carry into effect the provisions of any conveyance, deed, etc., by which the city may acquire property."

Considering appellant's objection in view of these authorities and statutory provisions, we see nothing in the record to show that there is any race discrimination wrought by the acceptance of this deed or donation in its present form. So far as appears, the city government may have made ample and adequate provisions for parks and playgrounds for the colored race, and in any event the matter must be left to the sound legal discretion of the governing authorities, to be exercised according to the needs and requirements of either race, and without discrimination between them.

On the question of discrimination, in reference to a proper application of school funds, it was held among other things in *Lowery's case,* 140 N. C., 33: "The two essential principles underlying the establishment and maintenance of the public school system of this State are: First, the two races must be taught in separate schools; and second, there must be no discrimination for or against either race. Keeping them in view, the matter of administration is left to the Legislature and the various officers, boards, etc., appointed for that purpose."

Speaking further to this subject in *Smith v. School Trustees,* 141 N. C., 143-160, and by way of illustration, the Court said:

"And from this it follows that the discretion conferred upon the defendants by the terms of section 12 is by no means an arbitrary one, but the same must be used as directed and required by the Constitution and in the light of the above decision. There are no facts or data given by which the Court may determine whether the contemplated expenditure is or is not an unequal and unlawful disbursement of the school funds. The defendants, in their sworn answer, aver that they have no desire or intent but to administer their trust in accordance with the law of the land, and it is right that we should act upon this statement till the contrary is made to appear by proceedings duly entered.

"This section, as stated, only relates to the disposition of the fund which is in no way involved in this suit. If defendants, contrary to their avowed purpose, shall endeavor to exercise the authority conferred upon them with an 'evil eye and unequal hand,' so as to practically make unjust discrimination between the races in the school facilities afforded, it is open to the parties who may be interested in the question, by proper action, to correct the abuse and enforce compliance with the law."

We were cited by counsel for appellant to the decision of this Court in *S. v. Darnell,* 166 N. C., 300, as an authority in support of its position, but the case in our opinion does not sustain the exception. That was a decision to the effect that a city or town under its right to provide for the general welfare of the municipality, had no power to pass a segregation ordinance affecting the rights of either race to own property in specified localities. The ruling was chiefly made to rest on the facts that the ordinance in question worked substantial interference with rights of private ownership of property, and being of that unusual character, could be sustained, if at all, only by express legislative sanction, and leaving it an open question whether and under what circumstances such an ordinance could be upheld under legislation especially authorizing it. It will thus be seen that the decision, based on an unauthorized interference with private ownership, has no practical bearing on the question presented in the instant case, which concerns chiefly the right under statutory authority of acquiring and regulating public and *quasi*-public facilities so as to make reasonable provision for separation of the races without undue discrimination between them.

We find no error, and the judgment on the verdict is affirmed.

No error.