MRS. T. D. JONES, SOUTHGATE JONES, J. L. MOREHEAD, W. L. FOU-SHEE, A. D. MATTHEWS, MRS. J. N. GORMAN, EDITH MATTHEWS, AND B. B. MATTHEWS v. CITY OF DURHAM.

(Filed 24 April, 1929.)

**1. Municipal Corporations G b—Railroad right of way properly included in lineal feet necessary in petition for street improvements.**

The right of way of a railroad company abutting on a street proposed to be improved by a city is properly included in the lineal feet in the petition for improvement under the provisions of C. S., 2707, requiring that a petition for local improvements shall be signed by at least a majority of the owners representing at least a majority of all the lineal feet of frontage upon the street, etc., proposed to be improved.

**2. Municipal Corporations G d—Procedure of owners objecting to assessments.**

The remedy of owners of property abutting upon a street proposed by petition to be improved, assessing the land of such owners, is given by statute, C. S., 2714, providing them an opportunity to be heard, and the right of appeal to the Superior Court by giving notice of appeal within ten days after confirmation by the municipal authorities, and when this has not been done, and the work has been completed, injunctive relief against the collection of the assessments by the city will not lie.

**3. Same—Findings of municipal authorities that petition is signed by proper number of owners is final.**

Where the municipal authorities have approved the petition of owners of land abutting upon a street proposed to be improved in accordance with the provisions of statute, their approval and order for the improvements to be made is final, except where it appears from the face of the petition, as a matter of law, that the signers do not represent a majority of the owners or of the lineal feet required by statute.

**4. Municipal Corporations G a—Power of City to Aid or Contract for paying street assessments.**

Where a railroad company by proceedings in mandamus has been compelled to construct an underpass for a street crossing, the city has the power to sign an agreement in the proceedings obligating itself to pay for

street improvements along the underpass, and where this has been done the city may accept the signature of the railroad company to a petition to improve the street as an owner of lineal feet abutting thereon and to pay the part assessed against such right of way for the improvements, and where the relevant provisions of the statutes in regard to street improvements have been complied with this furnishes no evidence of fraud. C. S., 2705, 2706, 2708, 2709, 2710, 2711, 2712, 2713, 2714.

APPEAL by plaintiffs from *Devin, J.,* at Chambers, in Durham, N. C.; in September, 1928. Affirmed.

This is an injunctive proceeding brought by plaintiffs against defendant to restrain it from collecting certain street assessments. The court below found the facts and rendered judgment in favor of defendant. The findings of facts are carefully set forth at some length and unnecessary to repeat here in full.

*Briefly:* (1) A writ of mandamus was brought by the city of Durham *v.* Southern Railway Company and other railroads to compel them to construct an underpass with proper approaches thereto in the city of Durham, to eliminate and abolish a dangerous grade crossing at Chapel Hill Street. The judgment rendered in the lower court was sustained by this Court—185 N. C., 240, and sustained by the U. S. Supreme Court, 69 L. Ed., 231 (266 U. S., p. 178).

(2) The judgment in the writ of mandamus set forth: *"The city of Durham agrees to do all underground work such as the relaying and replacing of water, gas and sewerage mains, street paving including curbs and gutters and also sidewalks."*

(3) The railroads, in accordance with the terms of the judgment, built the underpass and approaches at the cost of some $254,000.

(4) After the underpass and approaches were built, W. P. Budd, who was interested in a lot on the east approach of the said Chapel Hill Street underpass, circulated a petition for the street improvement area under the provisions of chapter 56, Laws 1915, and amendments. The total lineal feet within the local improvement area was 2893.30 feet. Budd obtained a total of 1334.80 feet. Later the Southern Railway Company signed, making a total of 2051.20 feet (the addition in the record is incorrect, but immaterial), leaving unsigned 842.10 feet, which made a majority of the lineal feet with the signature of the Southern Railway Company which was 716.40 feet. There were seventeen property owners, all except five signed the petition. Thus the petition had a majority of lineal feet and owners in the street area to be paved.

(5) The clerk's report showing the frontage signed and unsigned by the property owners, with the original petition, was submitted to the mayor and city council. A resolution setting forth in detail the whole matter was by a unanimous vote adopted by the mayor and city council

on 16 August, 1926, and a resolution made at the same meeting ordering the paving and making the assessments. These resolutions were published as required by law in the *Morning Herald,* a newspaper published in the city of Durham.

(6) The city council, the governing body of the city of Durham, did not cause to be placed upon the minute books of the city council of the city of Durham any record, by resolution or otherwise, of the contract or agreement between the city of Durham and the Southern Railway Company, by the terms of which the city of Durham was to assume and pay the assessment to be charged against the Southern Railway Company and the North Carolina Railroad Company, the lessor of the Southern Railway Company. The city council of the city of Durham did not cause to be made any record on the minute books of the city of Durham, of the payment, or the authority to pay, the assessment of the city of Durham, against the Southern Railway Company and the North Carolina Railroad Company. The only record of the agreement between the city of Durham and the Southern Railway Company with respect to the signing of a petition by the Southern Railway Company and with respect to the assumption and payment of the amount assessed against the Southern Railway Company is contained in the file of R. W. Rigsby, city manager, the files of S. C. Chambers, city attorney, which the plaintiffs did not see or know of prior to the beginning of this action, and the words "assumed by city" after the name of the Southern Railway Company in the assessment roll. Upon the completion of the improvements under said petition due notice was given of a public hearing on the adoption of the assessment roll, which hearing was set for and held on 28 February, 1927, in the city hall of the city of Durham, when and where interested persons were given an opportunity to be heard relative to said assessments. There was no objection to the assessment roll and it was adopted at 7:40 p.m., on 28 February, 1927, which is in words and figures as follows: "Street Assessment Roll: Chapel Hill Street from Main Street to Duke Street and Great Jones Street from Main Street to Chapel Hill Street. Total yardage 6,619.2. Total cost $25,784.98; property owners assessment $16,298.06."

Then is set forth the frontage of each property owner and the amount due by each for the improvement. The charges against the frontage in the rate set forth in the assessment roll represents a charge of two-thirds against the property owners and one-third against the city of Durham. In the case of the Southern Railway Company, the city assumed the assessment. On 22 March, 1927, the city of Durham paid to the city tax collector by warrant the assessments against the Southern Railway Company and the North Carolina Railroad Company in the sum of $4,062.70. None of the plaintiffs knew of the provisions of the judgment

in the case of the city of Durham *v.* Southern Railway Company, Norfolk and Western Railway Company and the Seaboard Air Line Railway Company, until after the said assessment roll was completed and adopted, and until a short time prior to the beginning of this action. None of the plaintiffs knew of the agreement between the city of Durham and the Southern Railway Company, in which the city of Durham assumed the payment of the said assessments against the Southern Railway Company and the North Carolina Railroad Company until after the said assessment roll was completed and adopted, and until a short time prior to the beginning of this action. The plaintiffs did not object to the proceedings of the city of Durham in respect to these assessments, because they relied upon the good faith of the officials of the city of Durham and upon the truthfulness of the published proceedings of the city of Durham, in respect to the said local improvements under the provisions of chapter 56, Public Laws 1915. The plaintiffs allege in their affidavits that had they known of the provisions of the said judgment or of the agreement between the city of Durham and the Southern Railway Company, concerning the manner in which the said petition was signed by the Southern Railway Company, they would have objected to the filing of the said petition, the adoption of the assessment roll and all other proceedings incident thereto and appealed from any action by the city of Durham tending to charge these plaintiffs with the costs of the said improvements.

This injunctive proceeding was instituted 9 August, 1928, after the plaintiffs had notice under the statute and the work was completed.

The court rendered the following judgment: "Upon the foregoing findings of fact; it is ordered, considered and adjudged, that the city of Durham was acting in the public interest in providing safe and convenient public streets under authority conferred by chapter 56, Public Laws 1915, as amended, and that the petition praying for such improvement is proper and regular on its face and all notices required by law were duly given and that the plaintiffs had full opportunity to appear and protest when the assessments were subsequently made, which they failed to do. Further, that by and under the terms of the judgment entered in the case of city of Durham *v.* Southern Railway Company, Seaboard Air Line Railway Company and Norfolk and Western Railway Company, in which the city agreed to do the paving, the city of Durham had a right to require said Southern Railway Company to sign such petition for the frontage occupied by its right of way, and when so signed, the governing body of the city had a right to consider such signatures in determining the sufficiency of said petition, and in so acting and in the doing of the work thereunder and in confirming the assessments in connection with such work, such assessments are not void

by reason of fraud or other cause, and such assessments as have not been paid are valid and subsisting liens against the several parcels of land; it is further, ordered, considered and adjudged, that the restraining order heretofore made in this cause be, and the same is hereby dissolved, provided that the dissolution shall not take effect pending any appeal to the Supreme Court."

The plaintiffs duly excepted, assigned errors and appealed to the Supreme Court upon the following grounds: (1) To the refusal of the court to grant the restraining order prayed for, and to the dissolution of the injunction as set out in the judgment; (2) to the action of the court in signing the judgment set out in the record.

*McLendon & Hedrick, J. L. Morehead, Brawley & Gantt and W. L. Foushee for plaintiffs.*

*S. C. Chambers and P. C. Graham for defendants.*

CLARKSON, J. *Question involved:* (1) Will a local improvement petition, required by C. S., 2707, signed by the Southern Railway Company, an abutting owner, which made a majority of all the lineal feet frontage (no question as to their being a majority in number of the owners), the assessment against said railway the city of Durham assumed to pay in a mandamus proceeding to force said railway and others to build an underpass, render an assessment thereunder void as to other abutting property owners in the area who did not sign but had notice of the proceeding, under C. S., 2705, 2712? We think not. See Public Laws 1915, chap. 56, sec. 5; C. S., 2703 *et seq.*

C. S., 2707, is as follows: "The petition for a local improvement shall be signed by at least a majority in number of the owners, who must represent at least a majority of all the lineal feet of frontage of the lands (a majority in interest of owners of undivided interests in any piece of property to be deemed and treated as one person for the purpose of the petition) abutting upon the street or streets or part of a street or streets proposed to be improved. The petition shall cite this article and shall designate by a general description the local improvement to be undertaken and the street or streets or part thereof whereon the work is to be effected. The petition shall be lodged with the clerk of the municipality, who shall investigate the sufficiency thereof, submit the petition to the governing body, and certify the result of his investigation. The determination of the governing body upon the sufficiency of the petition shall be final and conclusive."

In construing this section, this Court said in *Gallimore v. Thomasville,* 191 N. C., at p. 650: "The statute, C. S., 2707, provides that the determination of the governing body upon the sufficiency of the petition

for local improvements shall be final and conclusive. In *Tarboro v. Forbes,* 185 N. C., 59, this Court held that where it appears upon the face of the petition, as a matter of law, that the signers of the petition do not represent a majority of the lineal feet of the total frontage on the street, proposed to be improved, the determination of the governing body as to the sufficiency of the petition is not final or conclusive. In that case, the petition was held insufficient to support assessments, because it appeared upon the face thereof and from the order of the board of town commissioners, that the lineal feet of the frontage of the 'Town Common' had been excluded in determining the total of the frontage on the street, proposed to be improved. It was held that said frontage should have been included, as a matter of law, and that inasmuch as the total number of signers did not represent a majority of the lineal feet of frontage, including the frontage of the 'Town Common,' the petition was not sufficient. . . . *(Gallimore case.)* As to whether the number of persons owning lands fronting on said street was twenty-five or twenty-six involves only a question of fact; insofar as the sufficiency of the petition, authorized to be filed under C. S., 2707, involves only questions of fact, the determination of the governing body, in the absence of fraud, and when acting in good faith, is final and conclusive. . . . The fact that there were twenty-six, and not twenty-five, persons who owned the lands fronting on the street proposed to be improved, was not called to the attention of the city council until after the improvements had been made and the expense for the same been incurred. The sufficiency of the petition could not then be called into question for that a majority of the landowners had not signed same. That fact had been conclusively determined by the city council, acting in good faith, before the improvements had been ordered."

In *City of Charlotte v. Brown,* 165 N. C., 435, it is held: "Where a municipality levies a special tax for street improvements upon the land of an abutting owner in excess of that allowed by a statute applicable, the excess is a nullity and may be enjoined; and where the limitation prescribed is a certain per cent of the taxable value of the property, that valuation must control, whether the property lies upon one or several streets." *Winston-Salem v. Coble,* 192 N. C., 776; *Winston-Salem v. Ashby,* 194 N. C., 388; *Flowers v. Charlotte,* 195 N. C., 599: In the above cases the matter was jurisdictional and the proceeding void and the remedy by injunction permissible.

C. S., 2714, is as follows: "If a person assessed is dissatisfied with the amount of the charge, he may give notice within ten days after such confirmation that he takes an appeal to the next term of the Superior Court of the county in which the municipality is located, and shall within five days thereafter serve a statement of facts upon which he

bases his appeal, but the appeal shall not delay or stop the improvements. The appeal shall be tried at the term of court as other actions at law."

Under this section if the plaintiffs desired to attack the assessment when levied against their property, the statute gives the remedy. *Brown v. Hillsboro,* 185 N. C., 368; *Gunter v. Sanford,* 186 N. C., 452; *Leak v. Wadesboro,* 186 N. C., 683; *Mfg. Co. v. Commissioners of Pender,* 196 N. C., 744.

C. S., 2705, provides publication of resolution or notice. C. S., 2706, when petition required; 2708, what resolution shall contain; 2709, character of work and material; 2710, assessments levied; 2711, amount of assessments ascertained; 2712, assessment roll filed, notice of hearing; 2713, hearing and confirmation, assessment lien.

Everything was done by defendant as required by the statute. The court below found as a fact that "the plaintiffs had full opportunity to appear and protest when the assessments were subsequently made, which they failed to do." The work was done after plaintiffs had notice as required by the statute. The whole matter, on the face, was regular and in compliance with the statute. Plaintiffs' remedy, if they had any, was under C. S., 2714. They cannot now complain. The proceeding was not void.

In *Charlotte v. Alexander,* 173 N. C., 515, it is held: "Abutting property owners who have contracted with a municipality that the latter exceed its statutory authority in assessing their lands beyond a certain per cent of their value for street improvements, and to give it a written waiver of such rights, are estopped to deny the validity of the contract by accepting its benefits, and the 'waivers,' when obtained, are enforcible by the municipality." *In re Assessment v. R. R.,* 196 N. C., 756.

*Question two:* Did the Southern Railway Company, an abutting owner in the area, have the right to sign the petition and rely on the city of Durham to perform its agreement with said railway to pay for same in the mandamus proceeding against said railway requiring it and others to build an underpass? We think so.

The Municipal Finance Act, C. S., 2942(r), implies not only that a city may bear a part of the expense incident to the elimination of grade crossings, but may issue bonds therefor, this section providing that bonds may be issued by a city as follows, for that purpose: "The elimination of any grade crossing or crossings and improvements incident thereto, thirty years." *R. R. v. Goldsboro,* 155 N. C., at p. 362; *Durham v. R. R.,* 185 N. C., at p. 245. The agreement was legal and binding on the city of Durham.

In the mandamus proceeding the judgment contained the following: "The city of Durham agrees to do all underground work, such as the

relaying and replacing of water, gas and sewerage mains, *street paving* including curbs and gutters and also sidewalks." This agreement was binding on the city of Durham. It had the power to make it. This agreement was part of the judgment in the mandamus proceeding which required the underpass to be built by the railroads. See *Argentine v. Atchison, etc., R. R.,* 30 L. R. A., p. 255; *Woodruff v. Catlin,* 54 Conn., 277; *Westbrook's App.,* 57 Conn., 95; *Fairfield's App.,* 57 Conn., 167; *N. Y. & N. E. R. Co.'s App.,* 58 Conn., 532; and cases cited in the notes to the case of *Kelly v. Minneapolis,* 26 L. R. A., 92.

*Third question:* Was there any fraud practiced by the municipality? We think not.

The court below found "the city of Durham had a right to require said Southern Railway Company to sign such petition for the frontage occupied by its right of way, and when so signed, the governing body of the city had a right to consider such signatures in determining the sufficiency of said petition, and in so acting and in the doing of the work thereunder and in confirming the assessments in connection with such work, such assessments are not void by reason of fraud or other cause, and such assessments as have not been paid are valid and subsisting liens against the several parcels of land."

44 C. J., sec. 3297(7), is as follows: "In accordance with general principles it has been held that an assessment may be vacated or set aside, or its enforcement enjoined, by reason of fraud on the part of the municipal authorities making the assessments." *Gallimore, supra.*

We can see no evidence of fraud in the matter. The mandamus proceeding required the railroads to build the underpass, the city of Durham to pay the street paving. As heretofore stated, the city of Durham had the legal right to make this agreement. This judgment was affirmed on appeal to this Court and the U. S. Supreme Court. The railroad was an abutting owner and signed the petition at the request of the authorities of the city of Durham, knowing the city was liable under the judgment to pay for the street paving. Plaintiffs cannot complain, they are paying for exactly what they get—the street paved which abuts on their property. The Southern Railway gets what the city agreed to do after the underpass was built—the street paved which abuts on its property. The only complaint that plaintiffs might have was the fact that the city of Durham must increase its general tax a little by the city paying for paving the street abutting on the Southern Railway Company's property. It had a right, in its discretion, to make this agreement. In fact the enormous cost in building the underpass justified this minimum sum compared to the cost to the railroads. We can see no legal or equitable grounds for plaintiffs' not paying for their street assessments. The judgment below is

Affirmed.