WALLACE AUSTIN, ON BEHALF OF HIMSELF AND OTHER PROPERTY OWNERS AND TAXPAYERS IN THE CITY OF CHARLOTTE, N. C., v. VICTOR SHAW, MAYOR, LILLIAN R. HOFFMAN, CLERK, AND THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION.

(Filed 11 June, 1952.)

**1. Municipal Corporations § 41—**

While ordinarily a municipality may not expend public funds for improvements and construction outside its corporate limits unless specifically authorized by statute or its charter, where the building of underpasses and overpasses along a cross-line railroad track within the city would be greatly in excess of the cost of relocating the cross-line outside the city limits, the city may contribute funds for the construction of such cross-line outside its limits under the principle of compensation by way of substitution.

**2. Same—**

The power of a city to compel a railroad company at its own expense to eliminate grade crossings within the city is subject to the limitation that such power may not be exercised arbitrarily or unreasonably, and therefore the existence of such power does not preclude the municipality from contributing public funds in good faith under a comprehensive plan for the elimination of grade crossings within the city in the public interest. G.S. 136-20.

**3. Same—**

Where a comprehensive over-all plan for the elimination of grade crossings within the limits of a populous city requires alterations and constructions near the railroad company's passenger station, the city may lawfully expend its funds in contribution to such alterations and structures as expenses incidental to the over-all plan for the elimination of the grade crossings.

APPEAL by plaintiff from *McLean, Special Judge,* April Term, 1952, of MECKLENBURG. Affirmed.

This was a taxpayer's suit to restrain the City of Charlotte from executing a contract with the Southern Railway Company entailing the expenditure by the City of $1,250,000, for the purpose of eliminating railroad grade crossings in the City. Upon consideration of the pleadings and evidence offered the court denied the injunctive relief sought, and dismissed the complaint. Plaintiff appealed.

*Taliaferro, Clarkson & Grier for plaintiff, appellant.*
*John D. Shaw for defendants, appellees.*

DEVIN, C. J. The City of Charlotte according to the census of 1950 has a population of 133,212. The Southern Railway Company operates trains over three lines of railroad tracks through the City, the main line in the west side of the City, a freight line in the eastern portion of the City, and a cross-line connecting the main line with the line from Charlotte to Columbia and Augusta. Within the city limits there are 32 railroad crossings at grade. For the purpose of eliminating these hazards to public safety, the City, pursuant to resolution and notice, submitted to the qualified voters of the City an ordinance authorizing issue of $1,500,000 bonds to provide funds for the elimination of grade crossings and improvements incident thereto. The ordinance and bond issue were duly approved.

Thereafter, and following negotiations between the engineer for the City and the Chief Engineer of the Southern Railway Company, a comprehensive plan was tentatively agreed to providing ways and means for the accomplishment of the purpose sought, and a contract embodying the

terms of this plan has been prepared and will be executed on behalf of the City unless restrained in this action.

Without undertaking to set out in detail the proposed plan, which is a part of the record in the case, its salient features are these: The plan calls for elevating the main line double tracks of the Southern Railway Company near the passenger station, constructing underpasses and overpasses at other crossings, elimination of the use of the cross-line through the City and removing a portion of that track and substituting a new line outside the city limits to serve the same purpose of connecting the main line with line to Columbia and Augusta. The plan also contemplates changes in the structure of the passenger station and other buildings to conform to the grade separation plan at that place. It also appeared that it would cost less to build the cross-line outside the city limits than to build it within or to construct all grade separations. It was estimated that the completion of this entire plan would cost $5,000,000, and it was tentatively agreed that of this amount the City should contribute $1,250,-000, the Southern Railway Company $1,250,000, with the expectation of the parties that Federal funds for highway improvement will be available in an amount equal to these combined contributions, provided the contributions of City and Railway are pooled in the manner set out in the proposed contract.

It is admitted that the results to be secured by the performance of the contract would be conducive to the welfare of the City and its inhabitants, and that the means and methods of accomplishing this desirable end are feasible and reasonable, but the plaintiff's complaint voices the objection that the City is without power to enter into the contract, and that the contribution of the City's share toward the completion of the proposed plan would constitute an illegal expenditure of public funds of the City.

Three questions are raised: (1) whether the City has power to contribute City funds for the construction of the cross-line railroad track beyond the limits of the City; (2) whether it is necessary to expend public funds for the elimination of grade crossings if the City has power to require the railroad to do so at its own expense; and (3) whether the City may lawfully expend its funds in contribution to the cost of alterations of railroad structures not directly related to grade crossings.

1. The general rule is that a municipal corporation has no extra-territorial powers, and may not expend public funds for improvements and construction outside its corporate limits, unless for a public purpose it is so authorized by statute or by its charter. *Berry v. Durham,* 186 N.C. 421, 119 S.E. 748; *Asheville v. Herbert,* 190 N.C. 732, 130 S.E. 861; *Holmes v. Fayetteville,* 197 N.C. 740, 150 S.E. 624; *Riddle v. Ledbetter,* 216 N.C. 491, 5 S.E. 2d 542; *Murphy v. High Point,* 218 N.C. 597, 12 S.E. 2d 1; *Wilson v. Mooresville,* 222 N.C. 283, 22 S.E. 2d 907; *Nash v.*

*Tarboro,* 227 N.C. 283, 42 S.E. 2d 209; *Horner v. Chamber of Commerce,* 231 N.C. 440, 57 S.E. 2d 789; *Laughinghouse v. New Bern,* 232 N.C. 596, 61 S.E. 2d 802; 5 McQuillin Municipal Corporations, sec. 1969.

The general statute enumerating the powers conferred upon municipal corporations, G.S. 160-204, provides that property may be acquired by a city outside its corporate limits for certain specified purposes in connection with public services operated by the city, and the City of Charlotte by its charter, Ch. 366, Public Local Laws 1939, is given power to regulate and control the construction of railroad tracks so that they may not interfere with the public use of the streets. But neither of these statutes expressly authorizes the City to expend its funds for the construction outside its corporate limits of several miles of railroad track for the use of the Southern Railway Company.

However, after careful consideration of the pleadings and the evidence, and the findings of the court thereon, we think that in order to carry out the comprehensive plans tentatively agreed to between the City and the Southern Railway Company, as set forth in the proposed contract, for the purpose of eliminating grade crossings in the public interest, the expenditure of city funds for the purpose of this extra-territorial construction would be justified under the principle of compensation by way of substitution. Instead of building a line in the City and expending a much larger sum for many structures for underpassing and overpassing, the plan for acquiring rights of way and building a line outside of the city limits may properly be considered as a substitute the one for the other, and as a means to the completion of an over-all plan for a necessary public service. This view is in accord with the decisions of this Court in *Dudley v. Charlotte,* 223 N.C. 638, 27 S.E. 2d 732, where the City's agreement to build a bridge on another's property in part compensation for a conveyance of land for the establishment of a public park was upheld. Numerous authorities support the principle of compensation by substitution for the completion of definite projects for the public benefit. *Brown v. U. S.,* 263 U.S. 78; *Dohany v. Rogers,* 281 U.S. 362, 68 A.L.R. 434; *Darwin v. Cookeville,* 170 Tenn. 508; *Pitznogle v. R. R.,* 119 Md. 673; *Fitzsimons v. Rogers,* 243 Mich. 649; *Smouse v. Ry. Co.,* 129 Kan. 176.

In *Brown v. U. S., supra,* where the creation by the Government of a reservoir for irrigation inundated lands of adjacent owners, the right of the Government to condemn other lands to compensate such owners was upheld as a natural and proper part of the construction. *Chief Justice Taft,* speaking for the Court in that case, said: "A method of compensation by substitution would seem to be the best means of making the parties whole."

In *Dohany v. Rogers, supra,* where the State of Michigan in improving a highway moved a railroad track, and in substitution condemned other

lands for the railroad's use, it was held that, notwithstanding the land was to be used as a railroad right of way, its condemnation for that purpose was proper as essentially a part of the project for improving a public highway.

In *Darwin v. Cookeville, supra,* the town as part of a street project, pursuant to agreement between the town and the Railroad Company, proposed to acquire a strip of land for the use of the railroad as a right of way in relocating its tracks, and eliminating a grade crossing. This was approved, the Court holding the town had a right to make a reasonable expenditure of public funds for this purpose, as this was an incidental part of the cost of street improvement considering the project as a whole.

In *Pitznogle v. R. R., supra,* the right of the railroad to condemn land for the location of a substitute private road in lieu of an existing private road to be closed for railroad purposes, was upheld as a proper compensation by way of substitution.

2. The plaintiff contends the expenditure of the amount agreed upon as the City's share of the cost entailed by the proposed contract is unnecessary and unwarranted for the reason that the City has the power by proper ordinance to require the Railway Company at its own expense to adjust its tracks to eliminate grade crossings in the City.

The City by its charter, Ch. 366, Public Local Laws 1939, sec. 31 (6), is empowered "to regulate and control the laying and construction of railroad tracks . . . and to require railway companies of all kinds to construct at their own expense such bridges, underpasses, turnouts, culverts, crossings and other things as the City Council may find necessary." See also G.S. 160-54.

In *R. R. v. Goldsboro,* 155 N.C. 356, 71 S.E. 514 (decided in 1911), it was decided that in the exercise of its police power, when the safety of the public required, the City had power to compel a railroad company to lower its tracks to conform to the grade of the city streets. And in *Durham v. R. R.,* 185 N.C. 240, 117 S.E. 12, it was held the city had power to require the railroad company at its own expense to construct an underpass under a busy city street. This was affirmed on appeal to the Supreme Court of the United States (266 U.S. 178).

The broad principle stated in these decisions is in accord with the consensus of judicial opinion in other jurisdictions, but in its application to particular cases consideration must be given to the limitation on the sensus of judicial opinion in other jurisdictions, but in its application to or unreasonable in the light of all the facts. *Erie Railroad Co. v. Board of Public Utility Comrs.,* 254 U.S. 394. In that case *Justice Holmes* remarked, "But the extent of the states' power varies in different cases from absolute to qualified." Nor do we find from an examination of those

cases a necessary compulsion upon municipal corporations which would render invalid the action of a city in adopting in good faith a feasible and reasonable method for obtaining the desired results by co-operation with the railway company.

This view is supported by the decision in *Jones v. Durham,* 197 N.C. 127, 147 S.E. 824, where it was said: "The Municipal Finance Act, C.S. 2942 (r), (now G.S. 160-382), implies not only that a city may bear a part of the expense incident to the elimination of grade crossings, but it may issue bonds therefor." The agreement on the part of the City of Durham to pave the underpass constructed by the Railroad Company (*Durham v. R. R., supra*) was held legal and binding. In *Powell v. R. R.,* 178 N.C. 243, 100 S.E. 424, the action of the City of Raleigh in requiring the Railroad Company to replace with steel a decaying wooden bridge on Hillsboro Street over its tracks, was upheld, but it was said, this was done by the Company "for its own benefit."

In *Missouri P. R. Co. v. Omaha,* 235 U.S. 121, it was held that when the safety of the public required, a railway company may, consistent with due process of law, be required by municipal authority to construct at its own expense the means of abolishing grade crossings, but this was stated to be upon the view that the company would be "deemed to be compensated by the public benefit which the company is supposed to share."

As bearing on the question of benefit to the railway company by the elimination of grade crossings, we note that in *Nashville, C. & St. L. R. Co. v. Walters,* 294 U.S. 405, *Justice Brandeis* in writing the opinion called attention to the fact that the changes incident to the enormous increase in motor transportation, the aid given by the Federal Government to road building, the changes in the construction and use of highways have all resulted in depletion of rail revenue; that the highways were no longer feeders of railroads but provide competition to rail traffic; and that the prime instrument of danger is not so much from railroads as from motor vehicles. In that case it was held that where the authorities had required the railroad company to pay one-half the cost of eliminating grade crossings, the question of the reasonableness of the requirement was for the State Court to decide in view of the particular facts found. The Court said: "Police power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably."

Not only has the General Assembly authorized municipal corporations to issue bonds for the elimination of grade crossings, but in the construction of highway crossings at railroad intersections it is provided that the cost shall be divided between the railroad and the State. G.S. 136-20.

In our case the power of the City of Charlotte to execute the proposed contract with the Southern Railway Company for the elimination of grade crossings may not be successfully challenged on the ground that

the City did not require the Company to bear the entire expense of the operation. There is no allegation or suggestion that the action of the City was in bad faith or was arbitrary or unreasonable. Neither the necessity of the elimination of grade crossings in the City nor the appropriateness of the plan chosen to accomplish this purpose is controverted. Considering all the factors which entered into the solution of the problem confronting the City in its effort to abolish grade crossings in the public interest, and the delay and the uncertainty of the result of the extended litigation which would doubtless follow if it undertook to require the Railway Company to undergo the entire cost of $5,000,000 for this purpose, the action of the City in agreeing to a co-operative plan for the accomplishment of its objective should not be held by the court to be unwarranted or invalid. The voters have already signified their approval of the plan by voting a bond issue to pay the City's share of the expense involved.

3. If the City has power under the facts here shown to authorize execution of the proposed contract and to share in the expense of eliminating grade crossings in Charlotte, and the plan proposed is reasonably adapted to the speedy accomplishment of that purpose, it follows that the inclusion in the total expense, which the City agrees to share, of alterations and constructions made necessary by the elevation of the Railway Company's track near the passenger station is merely incidental to the comprehensive over-all plan adopted, and may not be made the basis of attack upon the validity of the proposed contract or the power of the City to execute it.

We conclude that the City of Charlotte has the power by proper resolution to authorize the execution of the proposed contract, and that the judgment denying plaintiff's motion for an injunction and dismissing his complaint filed for that purpose must be, and it is hereby,

Affirmed.