Glare J. Hoyt, J.
Plaintiff New Rochelle Water Company moves for summary judgment in the amount of $31,219.29, which it claims is due from the defendant by virtue of a contract, and the defendant City of New Rochelle has cross-moved for summary judgment dismissing the complaint. There appears to be no issue of fact involved and the court may, thus, grant summary judgment to one of the parties.
The company is a domestic water works corporation, within the meaning of the Public Service Law (§ 2, subd. 27) and the Transportation Corporations Law (§ 40), engaged in supplying water to the city and other municipalities in Westchester County. On March 3, 1949, the company contracted with the city to supply water for the extinguishment of fires and other fire protection purposes, the testing of apparatus, water exhibitions, street flushing and other purposes.
It appears that the parties first entered into a contract for the supply of water for fire extinguishment and other fire purposes in December, 1925. The original contract did not contain a provision, for reimbursement to the company for expenses incident.to the relocation of mains and hydrants.which is the subject of this litigation. However, a clause providing for such charge to the city was contained in a contract executed in 1937, which clause, as will more fully appear hereinafter, is contained in the current contract upon which this action.is brought. ..... .
*954 The agreement of March 3,1949 was to run from June' 1,1948, to Ma|- 31, 1949, and thereafter from year to year unless terminated by either party upon 60 days ’ notice. ;
. The mains and hydrants were set in the city streets!and were the property of the company, and the company agreed, at the request of the city, to install additional hydrants, provided an extension of pipes was not necessary, and the company was given the right to lay additional pipes and replace existing pipes. The agreement further provided that deficiency charges for extension of pipes should continue for a period of five years from the date of the extension.
Under this agreement, the company undertakes to supply water in the hydrants for the purposes indicated for which the city is to pay annually a flat charge for each existing hydrant and an annual charge for each inch-foot of pipe belonging to and maintained by the company within the city limits, which charges are also to apply to any additional hydrants requested by the city or any extensions or enlargements of pipes that may be necessary.
This litigation arises from a further provision in the contract which provides that if the city determines to change the line or grade of any street which has been accepted by the city, and in which there is an established grade, the city will notify the company, and the company will notify the city of ‘ ‘ resettings, replacements and repairs made necessary théreby ’ ’ and furnish the city with an estimate of the cost thereof. If the city instructs the company to proceed with the work the company shall do so and certify to the city the actual cost thereof. If in any contract year the cost does not exceed $600, said cost shall be the responsibility of the company. If the cost exceeds $600 the city shall reimburse the company for the excess over $600.
This agreement of March 3, 1949, which was duly executed by the city and approved by its Corporation Counsel, was amended in June of 1951 to provide for an increase in the annual rate per hydrant and in the annual charges for each inch-foot of main. This amendment confirmed the prior agreement in all other respects and provided for its continuance from year to year from June 1, 1951, subect to termination by either party on 60 days’ notice prior to May 31 of any year. This amendment was approved by the city’s Corporation Counsel and recited its execution by the city pursuant to resolution No. 80 of 1951 of the City Council.
In September, 1957, the agreement was further amended to provide for a term to end as of May 31, 1958, and, thereafter, from year to year unless terminated as “ hereinafter provided ”. *955 The amendment is silent, however, as to the notice to terminate. An increase in the annual charges for the mains is provided and it is agreed that the revised, rates are those charged in the New Rochelle division and that the rates may be superseded by the Public Service Commission. The company agrees to notify the city of any application for rate changes. The purposes of the contract are recited to be the supply and delivery of water for “ the extinguishment of fires and for other fire purposes, including the testing of fire apparatus and the exhibition of firemen in said City As with the prior amendments, this amendment confirmed the original agreement of March 3, 1949, was approved by the Corporation Counsel and was executed by the city pursuant to resolution No. 263 for the year 1957 by the City Council. No change was made in the clause providing for the city’s obligation to bear the cost of the relocation of mains.
On July 28, 1959, the city advised the company that it was improving Grand Boulevard and instructed the company to lower its mains crossing Grand Boulevard from Lambert Lane. The city advised that it would do the excavating and that ‘ ‘ the cost of pipe changes is to be applied against the amount stipulated in the current City Water agreement ”.
On September 29, 1959, the parties executed an agreement which recited a dispute as to who should bear the cost of relocating mains and hydrants necessitated by the reconstruction of Quaker Ridge Road, the company claiming that the city bear the cost and the city claiming that it had no responsibility therefor, and that the cost should be borne by the company, or by the county and/or the State of New York. The parties agreed that relocation should not be impeded or delayed and thus stipulated and agreed that the city, without prejudice to any of its rights or defenses in any future action or proceeding, would request the company to relocate its mains, hydrants and appurtenances on Quaker Ridge Road and that the company, without prejudice to any of its rights or causes of action, would relocate its mains, hydrants and appurtenances and that said request and relocation would not be construed to be a waiver of rights, causes of action or defenses of any of the parties and would be without prejudice to the legal rights of the parties with respect to the ultimate liability for the expense of said relocation.
The company, thereupon, did the work and served a notice , of claim oh the city for $31,219.29, for the Grand Boulevard work in the amount of $324.67 and for the Quaker Ridge Road work in the amount of $31,494.62, less the sum of $600 which under the agreement was the company’s obligation to assume. Upon the refusal of the city to pay the claim this action was instituted.
*956 . The city contests, the company’s claim,on four grounds:.first, that it is the obligation of, the compjany to pay for. relocation, and the city’s agreement to reimburse the company, therefore, is without consideration; second, that the amendment of June, 1951, based on resolution No.-80, is ineffective since the city had the power only to agree on rates and had no power, under its charter or ordinances, to pay for that which the company was obligated to pay under its charter as a public utility corporation; third, that the September, 1957 amendment pursuant to resolution No. 264 was effective to change the rates but could not bind the city to pay the cost of relocation which was the obligation of the company as a utility corporation, and; fourth, that the city did not determine to change Quaker Ridge Road, the city did not authorize the construction thereon and that the work was done by the State of New York and the County of Westchester who engaged private contractors who were paid by funds of the United States of America.
The court considers none of the city’s defenses to be valid and grants summary judgment to plaintiff as prayed.
Although many eases deny reimbursement to public utilities from the municipality for costs of relocation, an examination of the cases distinguishes them from the case at bar.
Where a mere license or grant is given a utility to place its pipes, conduits or wires in a city street, this right is subject to the municipality, in the proper exercise of its police power, requiring their relocation to accommodate grade changes or the addition.of other facilities, and the utility must bear the expense thereof (Matter of Deering, 93 N. Y. 361; Gas Light & Coke Co. v. Columbus, 50 Ohio St. 65; Roanoke Gas Co. v. City of Roanoke, 88 Va. 810; New Orleans Gas Light Co. v. Drainage Comm. of New Orleans, 197 U. S. 453; Port of New York Auth. v. Consolidated Edison Co. of N. Y., 27 Misc 2d 45).
. Here, the company is not the mere holder of a license or franchise to place or maintain its pipes and.hydrants in a city street. It contracted with the city to supply water to the city for fire protection and: other purposes, and in consideration thereof, the city agreed to pay the company annual charges based upon the number of hydrants and the size and length of the pipes and to pay the cost of relocation.
:. In • the absence of contract and- a statutory provision, the utility must pay for relocation, but the city is liable for the cost if it has so agreed." - (See', e.g:, New Rochelle Water Co. v. State of New York, 10 N Y 2d 287, where the State, pursuant to statute, expressly.undertakes to bear relocation costs.)
*957 In Parfitt v. Ferguson (3 App. Div. 176, affd. 159 N. Y. 111) a contract between the Board of Improvement and the Gas and Illuminating Company was upheld in a taxpayer’s action which sought to declare illegal a provision that made the municipality liable for relocation. The court held at page 182 of its decision: ‘ ‘ It was apparent that the company might be required to lay its mains and pipes in the streets, the permanent grade of which had not been established, and the question as to which party should bear the expense of making changes in the pipes, which should be made necessary by changes in the grades of the streets, was a proper and legitimate subject of negotiation and contract. It was, we think, a matter upon which the board of improvement was authorized to exercise its judgment, and with its determination the court cannot interfere. ’ ’
Another case, New York Inter-Urban Water Co. v. City of Mount Vernon (185 App. Div. 305) although denying relief to the utility company because the contract was not in effect at the time of relocation, makes it clear that had a prior contract between the parties providing for the municipality’s liability to bear the cost of relocation still been in effect, the utility could have recovered.
It, thus, appears that a contract provision obligating a municipality to bear the cost of relocation is valid and enforeible. (See Austin v. Shaw, 235 N. C. 722.)
The fact that such agreement has been enforced negatives the city’s assertion that such promises are unconstitutional. The city urges the claim of unconstitutionality on the premise that the city’s action would be a gift in violation of section 1 of article VIII of the New York State Constitution. This argument presupposes that the company acquired no rights under the contract. Had the parties not negotiated the contract, or had the contract not obligated the city to reimburse the utility for relocation, then the city’s payment might be in violation of this constitutional provision. There is no merit to the city’s contention that section 42 of the Transportation Corporations Law precludes the city from agreeing to pay for- the cost of relocation. This section, to the contrary, provides that water companies, such as the plaintiff herein, may furnish water to municipalities who may contract for such service and who shall buy and collect the amount agreed to be paid and the same shall be paid “ according to the terms and conditions of the contract Nothing therein contained prevents an undertaking by the municipality to bear costs of relocation. (See Barrington v. Cokinos, 161 Tex. 136.)
*958 The claim by the city that the contract is ultra vires and that" it was executed without authorization of the City Council is likewise without merit.
The fact that there .is no express statutory authority to provide reimbursement to utilities for relocation costs is not determinative of the issue herein. No statutory authority is needed where the courts have sanctioned the obligation when it has rested on a contract.
The contract in suit was executed in 1949 and amended on two occasions, each amendment being executed pursuant to a resolution of the City Council and each amendment confirming and not changing the original provision as to the city’s obligation to reimburse for relocation expense. The last resolution authorizing the extension of the contract in effect at the time of the dispute, although making no reference to the relocation cost provision, provided “ said contract to contain such terms and conditions as are approved by the Director of Law ’ ’.
The sole remaining defense of the city is that it did not determine to change the grade of the street and authorized no construction thereon, that the county and State did the work with a private contractor with Federal funds.
There is no evidence before the court to indicate the agreement made between the city and the county or State for the improvement of the street. The company, by virtue of the authorities heretofore cited, could look only to the city for reimbursement, not to the county or State. The city, thus, should have made provision in dealing with the county or State to provide for its expense of reimbursing the company, if such claim were possible. The company dealt with the city alone and was not obligated to inquire into the arrangements between the city and the county and State. (See Westchester Light. Co. v. Westchester County, 228 App. Div. 300, revd. on other grounds 255 N. Y. 297.)