N. C. STATE HIGHWAY COMMISSION v. FARM EQUIPMENT COM-
PANY, INC.; ROBERT C. HALL, Trustee; and the BANK OF
ASHEVILLE

No. 87

(Filed 16 June 1972)

1. Eminent Domain § 1; Highways § 5— substitute condemnation
     "Substitute condemnation" is a transaction in which the State
or an agency with the power of eminent domain takes land under
an agreement to compensate its owner with land to be taken in con-
demnation proceedings from a third person instead of with money.

2. Eminent Domain § 3— public use
     Due process of law requires that private property be taken under
the power of eminent domain only for a public use.

3. Eminent Domain § 7; Highways § 5— condemnation proceedings —
necessity and public purpose — substitute condemnation
     In ordinary condemnation proceedings, the question whether
the purpose for which private property is taken is a public one is
judicial, but the question of necessity and proper extent of the taking
is legislative and is subject to determination by the condemning
agency and in such way as the legislature may designate; in con-
troversies concerning substitute condemnation, however, necessity
is justiciable along with public purpose.

4. Highways § 5— railroad right-of-way — highway project — substitute
condemnation
     Where part of a railroad right-of-way was condemned for a
highway construction project, the Highway Commission had authority
to condemn, for the purpose of exchange with the railroad, land of
defendant which is required for the necessary relocation and up-
grading of the railroad's tracks thereon.

5. Railroads § 3— power of eminent domain
     A railroad corporation has the power of eminent domain. G.S.
40-2(1); G.S. 40-5; G.S. 62-220(2).

6. Railroads § 3— rights-of-way — purchase of fee — condemnation of
easement
     A railway can acquire by purchase a fee in the land over which
its tracks run; however, when a railway obtains such land in con-

Highway Comm. v. Equipment Co.

demnation proceedings it procures merely an easement for railroad purposes which does not deprive the owner of the fee or its use for purposes not inconsistent with its use for railroad purposes.

7. **Eminent Domain § 3; Highways § 5— substitute condemnation**

Substitute condemnation is a valid exercise of the power of eminent domain only when the substitution of other property is the sole method by which the owner of land taken for a public use can be justly compensated, and the practical problems resulting from the taking can be solved.

8. **Eminent Domain § 3; Highways § 5— substitute condemnation — effect of G.S. 136-18(16)**

The intent and effect of G.S. 136-18(16) is to require, as a condition precedent to substitute condemnation, (1) a written agreement binding the owner of the land to be used in highway construction to accept substitute property in exchange, and (2) a considered finding by the Highway Commission that such an exchange will save public funds and result in a safer and better highway.

9. **Eminent Domain § 5— compensation in money**

A condemnor cannot force a condemnee to accept compensation in any form other than money.

10. **Eminent Domain § 3; Highways § 5— substitute condemnation — public purpose — cost**

The condemnation of land for exchange can only be justified when the property for which it is substituted accomplishes the public purpose for which it was taken, and the cost is not disproportionate to the benefit derived.

11. **Eminent Domain § 7; Highways § 5— substitute condemnation — railroad right-of-way — easement**

The Highway Commission is without authority to condemn land in fee simple for the purpose of exchanging it for railroad right-of-way property to be used in a highway construction project, but may only condemn an easement to be used for railroad purposes.

12. **Railroads § 2— highway project — necessity for relocating railroad tracks — findings**

Trial court's finding that a highway project did not necessitate the relocation of a railroad's tracks across defendant's property outside the railroad's existing right-of-way was unsupported by the evidence and ignored an uncontradicted affidavit to the contrary, as well as information disclosed by maps introduced in evidence.

APPEAL by plaintiff from *Judge Harry C. Martin,* 1 March 1971 Session of BUNCOMBE, transferred from the Court of Appeals for initial appellate review by the Supreme Court under its general order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4) (1969).

As a part of State Highway Project No 8.3023203 (Project), the reconstruction of Highway No. 23, also known as Riverside Drive, the North Carolina State Highway Commission (Commission) instituted this proceeding on 12 December 1969 to condemn six separately described portions of an 8.61-acre tract of land belonging to Farm Equipment Company, Inc. (defendant).

Of the six tracts sought to be condemned three are drainage easements totaling 0.13 acres, and one is a .01-acre, triangular tract which will be a part of the new right-of-way for Riverside Drive. Commission's right to condemn these four tracts is conceded, and is not involved in this appeal. The two tracts in dispute are separately described in the complaint as "Railway Exchange Area—Tract One" and "Tract Two."

For the restricted purpose of description and location of the separate tracts sought to be condemned and of the railroad easement on the property, Commission attached to its complaint a map of defendant's property, made by J. H. Price, surveyor, on 30 October 1968. The complaint and map show, *inter alia:* Defendant's 8.61-acre tract is bounded on the east by Riverside Drive; on the north, south and west by other landowners. The French Broad River flows across the tract roughly along its western border. A spur track of the Southern Railway (Southern) traverses the land on a curve from north to south over a 20-foot right-of-way. At defendant's north property line, the east line of this right-of-way is approximatetly 125 feet from the west line of Riverside Drive as it then existed; at defendant's southern boundary, the east line of the right-of-way is approximately 35 feet from Riverside Drive.

Tracts One and Two, which contain 0.35 acres and 0.15 acres respectively, are narrow strips of land lying on each side of Southern's spur track right-of-way as it crosses defendant's property. The eastern line of Tract One is the western boundary of the right-of-way. At its north end, Tract One is 20.9 feet wide; at the south end, 28.52 feet wide. The western line of Tract Two is the eastern line of the right-of-way. At the north end, it is 10.05 feet wide; at the south, 1.5 feet wide. See the composite, illustrative sketch map attached hereto.

Upon allegations summarized below (our enumeration), Commission seeks to acquire the fee simple title to the two

tracts described above for the purpose of conveying them in fee to Southern:

(1) Southern owns land which Commission must acquire for Project. Southern has agreed in writing to accept Tracts One and Two in lieu of a portion of its property which Commission requires. Commission has determined by resolution "that an economy in the expenditure of public funds and the improvement and convenience in safety of the highway can be effected through the condemnation and exchange of the property described herein."

(2) Acting under G.S. 136-18(16), and after having complied with its terms, Commission condemns the fee simple title to Tracts One and Two "solely for the purpose of conveying said areas to the Southern Railway Company. The Commission condemns and appropriates no access to or from the above described railway exchange areas."

Answering, defendant moved to dismiss the action upon the ground that the complaint failed to state a claim upon which relief could be granted and, as a second and third defense, alleged:

(1) Southern's present easement over defendant's land is entirely sufficient for its legitimate purposes and neither Commission nor Southern has any necessity for Tracts One and Two;

(2) Commission's attempt to condemn these tracts for the purpose of conveying them to Southern is not for a public purpose;

(3) G.S. 136-18(16) does not authorize Commission to condemn land for the purpose of transferring it from one private owner to another under the circumstances of this case; if the statute does purport to authorize such a condemnation, to that extent it violates N. C. Constitution art. I, § 19 and the Fourteenth Amendment to the Constitution of the United States.

On 22 June 1971 Judge Martin conducted a pretrial hearing, presumably under G.S. 136-108. His judgment recites that, in ruling upon defendant's motion "to dismiss for failure to state a cause of action upon which relief can be granted," he considered the pleadings, briefs, and oral argument presented

by counsel for both parties as the basis for his findings of fact. The record and briefs of both appellant and appellee show that in addition to the pleadings, Commission presented to Judge Martin, and he did not exclude, the following documents:

(1) Minutes of Commission's meeting on 5 February 1970, at which it adopted the resolution referred to in the complaint.

(2) Written agreement between Commission and Southern, entered into 20 November 1968, with reference to the relocation of the spur track.

(3) Affidavit of State Highway Engineer Joseph Buckner, made 12 March 1971.

(4) Final plat showing "the property affected by the taking and superimposed thereon the nature and extent of the taking." This plat is the Price map. To it was appended Southern's Drawing No. 12-232 which showed the entire spur track system, a part of which traverses defendant's property. At the hearing these maps were introduced without restriction and without objection. From these maps it appears that the trackage on defendant's land, about 750 feet, is a small segment of the spur track.

Defendant presented no evidence.

The minutes of Commission's meeting on 5 February 1970 show that, in addition to the statement alleged in the complaint, the resolution adopted at this meeting also contained the following: For Southern's property, which Commission must acquire for Project, "Commission has agreed to furnish Southern Railway Company alternate property or pay the value of the property acquired as just compensation."

The agreement referred to in the foregoing minutes is the contract which Southern and Commission executed on 20 November 1968 as a part of the submission of Project as a Federal-aid highway. Commission agreed, *inter alia* (enumeration ours) :

(1) In the construction of Project, Southern's tracks along Riverside Drive must be relocated. In connection therewith Southern and Commission will each perform certain specified work. Commission will reimburse Southern for the work it performs.

(2) In consideration of a quitclaim deed from Southern for those portions of its right-of-way located within Project, Commission will acquire and convey to Southern, as partial payment, "an unencumbered fee simple title" to the strip of land outlined in orange (Tracts One and Two) on Drawing No. 12-232. (Property lines are not shown on this drawing, but defendant's Tracts One and Two are a portion of the total land which Commission would convey to Southern.)

(3) After its conveyance of the above described property to Southern, if any individual or company shall apply to Southern for a vehicular crossing at grade over the spur track, "Commission shall cause such applicant to enter into an agreement with Company concerning said grade crossings, said agreement to be in the usual form prepared by Company and to contain the Company's standard language, including, but not limited to, the obligation of such applicant to construct and maintain such crossings at the applicant's cost and expense, and in accordance with plans and specifications approved by Company, and the assumption by the applicant of all responsibility and liability resulting from the use of such crossing or from railroad operations at or in the vicinity thereof." (The source of Commission's power to comply with this requirement after its conveyance in fee simple is not apparent.)

In the affidavit of James Buckner, highway engineer residing in Buncombe County, it is averred (enumeration ours):

(1) The strip map (Drawing No. 12-232) correctly shows the location of those sections of Southern's tracks and right-of-way which Commission must appropriate in the construction of Project. It also shows the necessary relocation and additional lateral right-of-way required to upgrade the tracks for consideration of safety.

(2) According to the Price map, the tracks over the right-of-way across defendant's property have been laterally relocated in a westerly direction 8.47 feet at Southern station 18+62.97, the point where defendant's south boundary line intersects Southern's present right-of-way. This westerly relocation continues in a northerly direction, a distance of 130 feet to Southern station 19+91.26 and from there continues northerly "across said parcel of land directly on the 'Old' centerline."

(3) The relocated and upgraded tracks have been raised in elevation 6.9 feet at defendant's south line and 3.3 feet at the north line.

(4) The additional right-of-way across defendant's property is necessary: (a) to provide for the westerly lateral relocation referred to above and to provide horizontal support for the elevated tracks; and (b) to meet safety requirements for tracks paralleling the upgraded highway facility.

Upon the pleadings, the foregoing documents, "briefs and oral argument of counsel," Judge Martin made findings of fact and conclusions of law. (Here we note that the briefs and oral arguments are not in the record for our consideration.) Judge Martin's findings of fact are summarized as follows (enumeration ours):

(1) Southern has a right-of-way for a spur track over defendant's land. The Price map accurately illustrates defendant's property, the various portions of it which Commission seeks to condemn, and Southern's existing right-of-way.

(2) Southern's right-of-way over defendant's land is only an easement; Southern does not hold the right-of-way in fee simple.

(3) Tracts One and Two lie on either side of the spur track across defendant's property. They are not within the right-of-way required for Project, and are not themselves essential for its construction.

(4) Certain portions of the spur track located south of defendant's property do lie within the area required for Project, and those portions of the track must be relocated.

(5) "[P]rior to the institution of this lawsuit . . . the general public has a right to cross Southern's right-of-way over defendant's land. . . . "

(6) Defendant's property is the last property served by the sidetrack and the public's interest in its maintenance will not be affected by the outcome of this lawsuit. The spur track in question "serves various customers of the railroad and the public in general, and the defendant does not utilize the sidetrack where it crosses its property."

(7) Project requires no relocation of the tracks outside of the pre-existing right-of-way on defendant's property. Under the contract between Southern and Commission it will not be necessary to relocate any portion of the railroad track outside the pre-existing right-of-way across defendant's property. Any work required by the contract between Commission and Southern can be done within the existing right-of-way insofar as the track crossing defendant's property is concerned.

(8) Commission can acquire Southern's tracks which lie within Project's right-of-way and effect their relocation without taking Tracts One and Two from defendant.

(9) No facts substantiate Commission's findings in its minutes of 5 February 1970 that "economy, convenience, and safety" will be effected by the acquisition and exchange of defendant's property for the relocation of Southern's spur track south of defendant's property.

(10) If Commission is permitted to condemn and convey the fee in Tracts One and Two to Southern the railway will then own in fee two parallel strips of land through defendant's property, one strip on each side of its easement which bisects defendant's property in a north and south direction, and defendant and the public will be deprived of access to and from the remaining portions of defendant's property except by permission of the railroad.

Upon the foregoing facts Judge Martin concluded as a matter of law:

(1) Commission cannot condemn Tracts One and Two and convey them in fee to Southern in exchange for its property utilized in Project, for such a taking in fee would constitute the appropriation of defendant's property for a private purpose of the railroad and would permit Southern to acquire a greater estate in the property than it could condemn.

(2) G.S. 136-18(16), a valid statute when properly construed, would be unconstitutional if applied to the facts of this case.

(3) "Although a general acquisition of the railray's easement through one unified plan by substitute compensation of alternate right-of-way across third party's properties may be

proper," it is not necessary to take any part of defendant's property to carry out such unified plan, since there is no need to relocate the tracks outside the pre-existing easement on defendant's land.

(4) The substitute condemnation of defendant's property would not result in "economizing public funds through a reduction of the amount for all damage in completing the highway project"; nor does it appear (a) that the taking of defendant's property would be the best means of compensating Southern for "the first taking" or (b) that the taking would benefit the public in any way.

Based upon the foregoing conclusions, Judge Martin dismissed the action with prejudice insofar as it related to Tracts One and Two. Commission excepted to each finding of fact and conclusion of law and appealed.

*Attorney General Morgan, Deputy Attorney General White, Assistant Attorney General Hart for plaintiff.*

*McGuire, Baley & Wood by Charles R. Worley for Farm Equipment Company, Inc., defendant appellee.*

SHARP, Justice.

At the outset we note that it is immaterial whether the proceeding before Judge Martin be considered (1) a pre-trial hearing under G.S. 136-108 (1965) or (2) a motion to dismiss, converted under G.S. 1A-1, Rule 12(b) (1969) into a motion for summary judgment by the introduction of "matters outside the pleading." In either event, it was Judge Martin's function to decide all questions of fact and adjudicate Commission's controverted right to condemn Tracts One and Two for the purpose specified. If he concluded that Commission lacked the power it sought to exercise, it was his duty to dismiss the action as to Tracts One and Two. *See Kaperonis v. Highway Commission,* 260 N.C. 587, 133 S.E. 2d 464 (1963).

The basic questions presented by the exceptions and assignments of error which appellant brings forward are these:

(1) Can Commission, in the exercise of its right to condemn property for highway purposes, take from defendant Tracts One and Two, which will not be used in the construction of Project itself, in order to exchange them for property

belonging to Southern which will be a part of Project's right-of-way?

(2) If so, can Commission condemn Tracts One and Two in fee and convey them in fee to Southern?

[1] These questions involve the principle of "substitute condemnation," that is, a transaction in which the State or an agency with the power of eminent domain, A, takes land under an agreement to compensate its owner, B, with land to be taken in condemnation proceedings from a third person, C, instead of with money. The problem is well stated in 2A Nichols on Eminent Domain § 7.226 (3d Ed. 1970):

"Under certain extraordinary conditions the conventional method of compensating an owner whose property is taken by proceedings in eminent domain by paying him the value thereof is completely inadequate. To do complete justice to such an owner and, what is even more important, to meet the practical problems which arise by reason of the taking, it becomes necessary to furnish such owner with other lands as a substitute for the lands which have been taken. The question then arises whether such substituted lands may be acquired by eminent domain by the original condemnor . . . for the use of the owner who has been forced to give up his property for a conceded public use. Is such secondary acquisition of property to be considered for a public use?"

[2] Any exercise of the power of eminent domain is subject to the constitutional prohibition against the taking of property for private uses. "Private property can be taken by the exercise of the power of eminent domain only where the taking is for a public use." *Vance County v. Royster,* 271 N.C. 53, 59, 155 S.E. 2d 790, 795 (1967). Due process of law requires that private property be taken under the power of eminent domain only for a public use. *Fallbrook Irrigation District v. Bradley,* 164 U.S. 112, 161, 41 L.Ed. 369, 389, 17 S.Ct. 56, 64 (1896).

In controversies concerning substitute condemnation the ultimate condemnee, C, will usually contend, as defendant does here, that his land is being taken for a private use and that the taking is not necessary. See the excellent discussion of Substitute Condemnation in 54 Cal. L. Rev. 1097 (1966). See also Annot., 20 A.L.R. 3d 862 (1968).

Highway Comm. v. Equipment Co.

---

---

[3]  In ordinary condemnation proceedings the questions of necessity and public use are separable. "Whether the purpose for which private property is taken is a public one is a judicial question, but the question of necessity and of the proper extent of a taking is legislative and is subject to determination by such agency and in such way as the State may designate." *Highway Commission v. Young*, 200 N.C. 603, 607, 158 S.E. 91, 94 (1931). See 26 Am. Jur. 2d *Eminent Domain* § 114 (1966).

In controversies concerning substitute condemnation, however, the questions of public use and necessity are so entwined as to be inseparable. "Whether land has been taken for a public use in a substitute condemnation will depend on whether fairness requires that B [whose land has been taken for an undisputed public purpose] be compensated in land and whether there is a close factual connection between the taking of B's and C's land. Whether it is necessary to exercise the power of eminent domain—the first concept of necessity—will turn on whether B can be fairly compensated only in land. Whether it is necessary to take C's property—the second concept—depends on whether there is a close factual connection between the two takings. To argue that C's land has not been taken for a public use is to dispute the necessity of the taking, because the determinance of the two issues are the same." 54 Cal. L. Rev., *supra* at 1116. In a substitute condemnation, therefore, necessity is justiciable along with public purpose.

Courts have found no denial of due process or other constitutional infirmity in substitute condemnations where the owner of the land first taken (here, Southern) with whom the ultimate condemnee's land (here, defendant's) is to be exchanged, also has the power of condemnation *and could itself have condemned the land.* See Annot., 20 A.L.R. 3d 862, §§ 4, 6 (1968). "Thus, where part of a railroad right of way is condemned for the purpose of widening a state highway, the state may also condemn other property to be used by the railroad as a substituted right of way for the one originally taken." 2A Nichols on Eminent Domain § 7.226 (3d Ed. 1970). *See Dohany v. Rogers*, 281 U.S. 362, 74 L.Ed. 904, 50 S.Ct. 299 (1929) (facts parallel to those of this case) ; *Tiller v. Railway Company*, 201 Va. 222, 110 S.E. 2d 209 (1959) (Plaintiff Railroad, seeking to acquire

a portion of a highway agreed with State of Virginia that it would condemn C's land for the highway's location.) ; *Mfg. Co. v. Cleveland,* 159 Ohio St. 525, 112 N.E. 2d 658 (1953) (City transit system permitted to condemn C's land upon which to relocate railroad tracks removed from land City required.) ; *Fitzsimons & Galvin, Inc. v. Rogers,* 243 Mich. 649, 220 N.W. 881 (1928) (facts parallel to those of this case). See also *Brown v. United States,* 263 U.S. 78, 68 L.Ed. 171, 44 S.Ct. 92 (1923).

In *Austin v. Shaw,* 235 N.C. 722, 71 S.E. 2d 25 (1952), upon the rationale of the preceding decisions, this Court used the principle of "compensation by way of substitution," to justify the expenditure of city funds for extra-territorial construction. In *Highway Comm. v. School,* 276 N.C. 556, 173 S.E. 2d 909 (1970), the Court permitted substitute condemnation in order to provide access to private property which otherwise would have been landlocked by the construction of a non-access highway. The owner, whose access route had been taken as an incident to and a requirement for the construction of the highway, could only be made whole by means of a substitute route. The decision was that the taking of defendant's property to provide it served a public purpose.

[4]  That the construction of Project affects Southern's entire spur track system along the western boundary of "old Riverside Drive," and requires the relocation of certain portions of it south of defendant's property is not disputed. If any part of defendant's land is required for the necessary relocation and upgrading of the tracks thereon, the law permits Commission to condemn, for the purpose of exchange with Southern, that which is required for the purpose. It does not follow, however, that Commission can condemn defendant's land in fee for this purpose.

[5]  "[A] railroad corporation is without power to acquire and hold real estate except by statutory authority, either expressly conferred or necessarily implied from the powers contained in the charter or arising to it under the general laws." *Wallace v. Moore,* 178 N.C. 114, 115, 100 S.E. 237, 238 (1919). A railroad corporation has the power of eminent domain. G.S. 40-2(1), 40-5 (1966) ; G.S. 62-220(2) (1965).

[6]  G.S. 40-5 (Supp. 1971) empowers any railroad doing business in this State, when it has been ordered by the Utilities

Commission to construct an industrial siding as provided in G.S. 62-232 (1965), to exercise the right of eminent domain in order to acquire *such right-of-way as may be necessary* to carry out the orders of the Commission. G.S. 62-220 (3) and (4) (1965) authorized every railroad corporation to take and hold by *voluntary* grants and by purchase real estate to aid in the construction and maintenance of its railroad and the stations and accommodations necessary to accomplish the objects of its incorporation. Real estate received by voluntary grant "shall be held and used for the purposes of such grant only." Thus, by purchase a railway can acquire a fee in the land over which its tracks run. *See Craig v. R. R.,* 262 N.C. 538, 138 S.E. 2d 35 (1964) ; *McCotter v. Barnes,* 247 N.C. 480, 101 S.E. 2d 330 (1957). However, when a railroad corporation obtains such land in condemnation proceedings it procures merely an easement to be used only for railroad purposes. Condemnation is not to be used as "a means of acquiring property for the benefit of the corporation." *Shields v. R. R.,* 129 N.C. 1, 7, 39 S.E. 582, 584 (1901). *Accord, Griffith v. R. R.,* 191 N.C. 84, 87, 131 S.E. 413, 415 (1926) ; *Phillips v. Telegraph Co.,* 130 N.C. 513, 524, 41 S.E. 1022, 1025 (1902) ; *R. R. v. Sturgeon,* 120 N.C. 225, 26 S.E. 797 (1897). It has "no right or authority to use or let the property for private or nonrailroad purposes." *Sparrow v. Tobacco Co.,* 232 N.C. 589, 593, 61 S.E. 2d 700, 703 (1950). Such a right-of-way is an easement for railroad purpose and does not deprive the owner of the fee or its use for purposes not inconsistent with its use for railroad purposes. *Bivins v. R. R.,* 247 N.C. 711, 102 S.E. 2d 128 (1958) ; *R. R. v. Manufacturing Co.,* 229 N.C. 695, 51 S.E. 2d 301 (1948) ; *R. R. v. McLean,* 158 N.C. 498, 74 S.E. 461 (1912).

The foregoing authorities notwithstanding, Commission contends that G.S. 136-18(16) empowers it to condemn Tracts One and Two in fee simple for the purpose of exchange with Southern solely upon its findings (1) that Southern has agreed in writing to accept these tracts "as a substantial portion of just compensation for the taking of its property" and (2) that, in Commission's opinion, an economy in the expenditure of public funds and highway improvement, safety and convenience will result. This section is quoted below:

"The State Highway Commission shall have authority, under the power of eminent domain and under the same procedure as provided for the acquirement of rights of way, to acquire

title in fee simple to parcels of land for the purpose of exchanging the same for other real property to be used for the establishment of rights of way or for the widening of existing rights of way or the clearing of obstructions that, in the opinion of the Commission, constitute dangerous hazards at intersections. Real property may be acquired for such purposes only when the owner of the property needed by the Commission has agreed in writing to accept the property so acquired in exchange for that to be used by the Commission, and when, in the opinion of the Commission, an economy in the expenditure of public funds and the improvement and convenience and safety of the highway can be effected thereby."

To accept Commission's interpretation of G.S. 136-18(16) would require us to hold the act unconstitutional. As Johnson, J., well said in *Brest v. Jacksonville Expressway Authority*, 194 So. 2d 658, 20 A.L.R. 3d 854 (Fla. App. 1967), *aff'd.* 202 So. 2d 748 (Fla. 1967) :

"To hold otherwise would open the door wide open for abuse and would permit a condemning authority to make a deal with the owner of private property to condemn a parcel of more desirable property, maybe in a better neighborhood or on a more economically strategic corner upon which to relocate the private owner's motel or building, in exchange for the parcel needed by the expropriating authority. This would be contrary . . . to both the Federal and State Constitutional provisions safeguarding property rights.

"The Legislature cannot under the guise of exercising sovereign power of eminent domain, which can only be exercised for a public purpose, take a citizen's property without his consent and give it or sell it to another for private use, even though compensation is paid therefor, for to do so would be in violation of the Constitution of the United States Amendment 14. Also the power to take private property is in every case limited to *such* and *so much* property as is necessary for the public use in question." *Id.* at 661.

[7, 8]  We hold that substitute condemnation is a valid exercise of a power of eminent domain only when the substitution of other property is the sole method by which the owner of land taken for public use can be justly compensated, and the practical problems resulting from the taking can be solved.

The intent and effect of G.S. 136-18(16) is to require, as a condition precedent to substitute condemnation, (1) a written agreement binding the owner of the land to be used in highway construction to accept substitute property in exchange, and (2) a considered finding by Commission that such an exchange will save public funds and result in a safer and better highway. Obviously, however, the fact that an exchange of C's property for B's will be less expensive than paying B the fair market value of his land cannot be the test for determining whether the taking is necessary or for a public purpose.

[9, 10] Properly construed, the statute requires the Commission to take sensible, preliminary steps before resorting to a condemnation which might otherwise turn out to have been a futile, expensive, and oppressive operation. It is well settled that a condemnor cannot force a condemnee to accept compensation in any form other than money. 3 Nichols on Eminent Domain § 8.2, and cases cited therein (3d Ed. 1965) ; 54 Cal. L. Rev., *supra,* 1107. Furthermore, the condemnation of land for exchange can only be justified when the property for which it is substituted accomplishes the public purpose for which it was taken, and the cost is not disproportionate to the benefit derived.

[11] We hold, therefore, that Commission is without authority to condemn any part of defendant's land in fee simple for the purpose of exchange with Southern. In this situation it may condemn no more land and no greater estate therein than Southern could condemn for itself. In short, it may only do for Southern what Southern itself could do. Southern will not be permitted to accomplish indirectly through Commission that which it could not do directly.

To allow Southern to acquire in fee Tracts One and Two, a narrow strip on each side of its 20-foot easement across defendant's property, would divide the land into two separate tracts with no access to each other. Defendant would be placed at the mercy of the railroad and conceivably deprived of any access to its land west of the tracks except by way of the river. The law of this State is calculated to prevent such a situation.

[12] The complaint does not specify the purpose for which Southern would use Tracts One and Two if and when Commis-

sion acquired and conveyed them to it. As to the tracks across defendant's property, however, in his finding of fact No. 7 (our enumeration) Judge Martin found that no relocation outside Southern's existing right-of-way was necessitated by Project and that any work required under the contract between Southern and Commission could be done within that easement. This finding, however, cannot be sustained on this record. It is unsupported by the evidence and ignores the uncontradicted Buckner affidavit to the contrary, as well as information disclosed by the two maps.

Buckner asserted that the relocation of certain portions of the track required (1) the upgrading of the entire spur-track system and additional lateral right-of-way on either side of the present right-of-way; and (2) the relocation laterally in a westerly direction 8.47 feet from defendant's south property line to Station 19+91.26, a distance the Price map shows to be 130 feet north of the southern line. From the map it appears that at defendant's southern boundary the western rail of the relocated track is, or will be, outside the right-of-way. However, for an exact interpretation of the map, and a complete understanding of the actual relocation of the tracks on the ground, the testimony of the engineer himself is required. In his affidavit, Buckner says that the entire track across defendant's property has been, or will be, elevated from 3.3 feet at the north end to 6.9 feet at the south end; that "the additional right-of-way" across defendant's property is necessary to provide for the westerly lateral relocation of the tracks; to provide horizontal support required by the elevation of the tracks; and to meet safety standards for tracks paralleling a highway.

Although the judge was not required to accept the Buckner affidavit, he could not ignore its uncontradicted assertions and make contrary findings with no evidence to support them. Neither could he ignore the maps which provided the only evidence as to the relocation of the tracks.

Judge Martin's findings of fact (our enumeration) Nos. 1 through 4 are not controverted on appeal. As to findings Nos. 5 and 6, we find no evidence in the record to support them. However, we deem them immaterial to decision here. Findings Nos. 8 and 10 are conclusions of law. Finding of fact No. 9 relates to Commission's opinion with reference to the condemnation of the fee in Tracts One and Two, and this decision renders those opinions irrelevant.

Judge Martin's conclusions of law Nos. (1) and (2) (our enumeration) are correct. Conclusions Nos. (3) and (4) are based upon factual findings not substantiated by the record and are, therefore, not correct. However, the proper disposition of this case requires that the judgment entered be vacated in its entirety and the case remanded to the Superior Court for a hearing *de novo,* and it is so ordered.

If, in consequence of Project's construction, additional right-of-way has been, or will be, required for Southern's tracks across defendant's land, and Commission desires to condemn the necessary *easement* for Southern, it may do so in accordance with the principles of law enunciated in this opinion. That course will necessitate compliance with G.S. 136-18(16), appropriate amendments to the pleadings and—thereafter—a hearing *de novo* under G.S. 136-108.

Judgment vacated and cause remanded.