THE TOWN OF HIGHLANDS, a North Carolina Municipal Corporation, Plaintiff v. KATHRYN B. HENDRICKS, and husband, NATHAN HENDRICKS, III, SUSAN B. INMAN, and husband, EDWARD INMAN; SIDNEY LOUIS McCARTY, III, MARY McCARTY PRESSLEY, MARGARET McCARTY EARLY, and THE ESTATE OF SIDNEY LOUIS McCARTY, JR.; JOHN HENRY CHEATHAM, III, Successor Trustee of the Leila Barnes Cheatham North Carolina Residence Trust, and LEILA BARNES CHEATHAM; ALICE MONROE NELSON and L. KENT NELSON; MICHAEL WENTZ; KALALANTA CORPORATION, A Florida Corporation; MILDRED T. JOHNSON and MILDRED FENTRISS THORNTON FELTON; ALICE BLANC MONROE NELSON and husband, L. KENT NELSON, LINDA LOGAN MONROE, RABURN BLANC MONROE KELLY and wife, STACEY KELLY, JULIAN DANTZLER KELLY, III, Bunrotha Limited Partnership, MOYNA BLAIR MONROE, DIANA MONROE LEWIS, and J. THOMAS LEWIS; BUNROTHA LIMITED PARTNERSHIP, a Georgia Limited Partnership, and MALCOLM LOGAN MONROE; and WALTER PRESTON EVINS, SAMUEL N. EVINS, JR. and SUSAN C. EVINS, Defendants

No. COA03-55

(Filed 1 June 2004)

## 1. Cities and Towns— condemnation—escrow agreement— exclusive emolument

An escrow agreement established by a town for a road project providing that the town attorney would be reasonably available to contributors to the escrow account to discuss condemnation proceedings, and that the costs of such communication were to be charged against the escrow account, did not delegate the town's power of eminent domain to a group of private citizens and did not amount to an exclusive emolument in violation of N.C. Const. art. I, § 32, because: (1) there was no evidence presented that the contributors in any manner controlled proceedings or consulted with the town attorney concerning the condemnations; (2) there was ample evidence that the condemnation was for a public necessity; (3) the contributors to the escrow account would receive a benefit from the widening and paving of the pertinent road; (4) the condemnation of rights of way for the purpose of widening and paving a portion of the pertinent road was intended to promote the general public welfare; and (5) there was a reasonable basis for the town to conclude that the escrow agreement would be in the public interest, and it was not unreasonable for the town to solicit contributions to assist it in defraying the costs of the condemnation when the primary purpose was the promotion of the general public welfare and not a private interest.

TOWN OF HIGHLANDS v. HENDRICKS

[164 N.C. App. 474 (2004)]

### 2. Cities and Towns— condemnation—public use

The trial court did not err by concluding that the condemna-
tions were for a proper public purpose even though defendants
contend it was uncertain whether the condemned property could
ever be used for a public use, because: (1) defendants provide no
support for their contention that any contingency must defeat a
direct condemnation proceeding; (2) when a town in good faith
initiates condemnation proceedings for a public use and in
accord with legal requirements, the fact that some obstacle may
potentially derail the intended use will not defeat that purpose;
and (3) the obtaining of an environmental impact study was not a
prerequisite to the commencement of condemnation proceedings
even if the Department of Transportation initiated it.

### 3. Cities and Towns— condemnation—alleged violations

The trial court did not err in a condemnation case by finding
and concluding that plaintiff town's actions were lawful and bind-
ing even though defendants contend there were violations com-
mitted concerning the condemnation resolution, because: (1)
N.C.G.S. § 160A-75 does not apply in the instant case since the
escrow agreement was adopted as a resolution and not as an ordi-
nance, thus affecting only those involved in the instant condem-
nation rather than the general public; (2) although defendants
contest the propriety of the escrow agreement, any action for the
breach of the escrow agreement would have to be brought by a
party to the agreement; (3) although defendants contend the
Department of Transportation (DOT) was not prohibited by
statute from condemning the property, defendants acknowledge
that the policies of DOT itself did prevent DOT from condemning
the property and thus the town was authorized under its resolu-
tion to initiate the condemnation proceedings; and (4) the town
did not act prematurely by sending notices of the actions be-
fore 30 September 2001 when nowhere in the authorizing resolu-
tion does it prescribe when the town may send notices of the
actions, and the only limitation resolved that no official proceed-
ings may be filed before 4 October 2001 which was the date the
actions were filed.

Appeal by defendants from judgment entered 1 August 2002 by
Judge James U. Downs in Macon County Superior Court. Heard in the
Court of Appeals 15 October 2003.

*Coward Hicks & Siler, PA, by William H. Coward, for plaintiff-appellee.*

*Adams Hendon Carson Crow & Saenger, PA, by Martin Reidinger and Cynthia M. Roelle, for defendant-appellants.*

STEELMAN, Judge.

Defendants appeal from the order of the trial court determining that plaintiff's condemnation of defendants' real property was for a public purpose. We affirm.

In 2001 and 2002, plaintiff filed complaints, declarations of taking and notices of deposits against all defendants in separate filings. Defendants' property was to be taken for the public use of widening and improving SR 1604, or Bowery Road, an unpaved street.

Bowery Road (SR 1604) is an unpaved road located within the municipal limits of the Town of Highlands in Macon County. It is a narrow, winding road, with blind curves making it dangerous to vehicular traffic, including fire and emergency vehicles. In places, it is not wide enough for two vehicles to pass each other. Accidents frequently occur on Bowery Road. As of the time of the trial of this matter, Bowery Road served 107 residents of the Town of Highlands.

In the fall of 1998, the North Carolina Department of Transportation proposed to widen and pave Bowery Road, and requested input from the Town of Highlands concerning this project. The proposal was to widen and pave a .7 mile portion of Bowery Road beginning at its intersection with Horse Cove Road (SR 1603). At the 2 December 1998 meeting of the Town Board, the matter was discussed. There was strident disagreement among the residents owning property along Bowery Road and those using the road concerning the project. Some residents wanted the road widened and paved, deeming its present condition to be unsafe. Others were adamantly opposed to the project, concerned it would bring more traffic to the area and alter its natural beauty. These citizens preferred that a separate road be constructed to provide access to the properties beyond the .7 mile portion of Bowery Road instead of widening it.

In early 1999, the Department of Transportation sent right of way agreements to the property owners along the .7 mile portion of Bowery Road. Only three of thirteen owners signed the right of way agreements. Under Department of Transportation Division policy, it would not condemn the remaining right of way unless seventy-five

percent of the property owners agreed to grant a right of way. The Town Board set up a committee of residents from both factions to see if a solution could be agreed upon. The committee was unable to reach any agreement.

On 15 September 1999 the Town Board adopted a resolution finding that it was necessary for "the public use and benefit" for the Town to acquire right of way for the widening and improvement of Bowery Road. The resolution further provided that the costs of litigation and payment of compensation was to be funded by the property owners along the road. On 17 November 1999, the Town Board passed a resolution establishing an escrow fund for the Bowery Road project. This was subsequently amended 15 December 1999 to provide that the property owners would contribute $400,000.00 towards the project and that any costs over that amount would be borne by the Town.

In the spring of 2001, certain residents of the Bowery Road area filed an application to have certain properties placed upon the National Register of Historic Places (the Playmore/Bowery Road Historic District). This included properties that abutted the portion of Bowery Road that was being considered for right of way acquisition and improvement.

On 7 February 2001, the Town Board voted to terminate the Bowery Road escrow agreement on 30 September 2001 unless the sum of $400,000.00 had been contributed by that date. On 31 August 2001 the Town mailed notices to property owners on Bowery Road that it intended to initiate condemnation proceedings.

On 28 September 2001 and 2 October 2001, residents owning property along Bowery Road filed suit in the Superior Court of Macon County seeking to enjoin the Town of Highlands from condemning their property to widen Bowery Road. These actions were dismissed by Judge Downs under Rule 12(b)(6) of the Rules of Civil Procedure on 15 January 2002. This order was affirmed by a divided panel of the Court of Appeals on 5 August 2003. *Nelson v. Town of Highlands*, 159 N.C. App. 393, 583 S.E.2d 313 (2003). On 2 April 2004, the Supreme Court reversed the Court of Appeals, adopting the dissent. *Nelson v. Town of Highlands*, 358 N.C. 210, 594 S.E.2d 21 (2004).

On 4 October 2001, plaintiff Town of Highlands instituted the instant condemnation actions against property owners along Bowery Road. Defendants filed answers raising numerous defenses to the

condemnation actions. Following an evidentiary hearing at the 8 April 2002 session of Superior Court for Macon County, Judge Downs entered an order providing that: 1) the properties condemned were deemed taken for public purposes; 2) title to the properties vested in the Town as of 4 October 2001; 3) the determination of just compensation due the defendants was reserved for jury trial; 4) the Town's escrow agreement was declared to be legal, valid and enforceable; and 5) defendants' motions to dismiss under Rule 12(b)(6) were denied.

Defendants appeal this order. Defendants made 107 separate assignments of error in this matter, but grouped these assignments into three arguments, each with subparts. We address defendants' arguments as presented in their brief.

**[1]** Defendants argue in their first assignment of error that the trial court erred in finding that the escrow agreement was legal, valid and enforceable. Defendants contend that it was an exclusive emolument in violation of the North Carolina Constitution. We disagree.

*De novo* review is appropriate when considering allegations of constitutional violations on appeal. *Air-A-Plane Corp. v. North Carolina Dept. of Environment, Health and Natural Resources*, 118 N.C. App. 118, 124, 454 S.E.2d 297, 301, *disc. rev. denied*, 340 N.C. 358, 458 S.E.2d 184 (1995). Under a *de novo* review, this Court considers the matter anew, and may substitute its own judgment for that of the trial court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002).

An emolument is "[a]ny perquisite, advantage, profit, or gain arising from the possession of an office." *Black's Law Dictionary*, 542 (7th ed. 1999). Exclusive emoluments are prohibited by our State Constitution. "No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. Art. I., § 32.

The escrow agreement established by the Town provided that the town attorney would be reasonably available to the contributors to the escrow account to discuss the condemnation proceedings. The costs of such communications were to be charged against the escrow account. The escrow agreement further stated that "nothing in this Agreement is to be construed as an agreement for legal services between the Town Attorney and the [contributors]." It also provided that the Town had the exclusive right to make all decisions concern-

**TOWN OF HIGHLANDS v. HENDRICKS**

[164 N.C. App. 474 (2004)]

ing the condemnation, including the right to rescind any resolution authorizing the condemnation.

Defendants assert that the Town delegated its power of eminent domain to a group of private citizens, granted them an exclusive right to consult with its attorney, and that this conferred an exclusive emolument. There was no evidence presented that the contributors in any manner controlled proceedings or consulted with the Town attorney concerning the condemnations. Further, there was ample evidence that the condemnation was for a public necessity. Bowery Road was dangerous for vehicular traffic, including fire, police and emergency vehicles. This was uncontradicted in the record. The area served by Bowery Road had grown in recent years to the point that it served 107 residents.

It is clear that the contributors to the escrow account would receive a benefit from the widening and paving of Bowery Road. However, not every classification which favors a particular group is an exclusive emolument in violation of Article I § 32 of the North Carolina Constitution. Our Courts have applied a two-prong test in determining the existence of an unconstitutional exclusive emolument:

1) the exemption or benefit is intended to promote the general welfare rather than the benefit of the individual, and

2) there is a reasonable basis for the legislature to conclude that the granting of the exemption or benefit serves the public interest.

*Peacock v. Shinn*, 139 N.C. App. 487, 495, 533 S.E.2d 842, 848 (2000). In the instant case, the condemnation of rights of way for the purpose of widening and paving a portion of Bowery Road was clearly intended to promote the general public welfare. Bowery Road is a public road, to be used by anyone, not just the contributors to the escrow account. Further, there was a reasonable basis for the Town to conclude that the escrow agreement would be in the public interest. It was clear from the outset that any right of way condemnations for Bowery Road would be contentious. This would not be a normal condemnation case. Given this fact, it was not unreasonable for the Town to solicit contributions to assist it in defraying the costs of the condemnation. While this type of procedure should not be encouraged, it does not run afoul of the ban on exclusive emoluments when, as in this case, the primary purpose was the promotion of the general

public welfare and not a private interest. This assignment of error is without merit.

When a case is tried without a jury, the judge's findings of fact are binding on appeal "absent a total lack of substantial evidence to support" them. *Pulliam v. Smith*, 348 N.C. 616, 626, 501 S.E.2d 898, 903 (1998). This is true "even though the evidence might sustain a finding to the contrary." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citations omitted). It is the province of this Court to determine if the trial court's proper findings of fact support its judgment. *Alpar v. Weyerhaeuser Co.*, 20 N.C. App. 340, 345, 201 S.E.2d 503, 507 (1974), *cert. denied Alpar v. Weyerhaeuser Co.*, 285 N.C. 85, 203 S.E.2d 57 (1974). This standard of review is applicable to the defendants' remaining assignments of error.

**[2]** In their second assignment of error, defendants contend that the trial court erred in concluding that the condemnations were for a proper public purpose because it is uncertain whether the condemned property can ever be used for a public use. We disagree.

Defendants argue that the use of the land for a public purpose is contingent upon several factors and is therefore improper. In support of their position, defendants cite the case of *N.C. State Highway Com. v. Farm Equipment Co.*, 281 N.C. 459, 189 S.E.2d 272 (1972). *Farm Equipment* held that:

> *substitute condemnation* is a valid exercise of a power of eminent domain only when the substitution of other property is the sole method by which the owner of land taken for public use can be justly compensated, and the practical problems resulting from the taking can be solved. The intent and effect of G.S. 136-18(16) is to require, as a condition precedent to *substitute* condemnation, (1) a written agreement binding the owner of the land to be used in highway construction to accept substitute property in exchange, and (2) a considered finding by Commission that such an exchange will save public funds and result in a safer and better highway.

*Id.* at 473-74, 189 S.E.2d at 281 (emphasis added). The instant case is not a substitute condemnation proceeding, but is a direct condemnation proceeding. Defendants provide no support for their contention that any contingency must defeat a direct condemnation proceeding, and our search of the law has found none. N.C. Gen. Stat. § 40A provides the "exclusive condemnation procedures to be used in this

State. . . ." N.C. Gen. Stat. § 40A-1 (2003). Nowhere in N.C. Gen. Stat. § 40A does it state that a condemnation proceeding may not move forward if there be any contingencies. N.C. Gen. Stat. § 40A-10 (2003) states: "When any property condemned by the condemnor is no longer needed for the purpose for which it was condemned, it may be used for any other public purpose or may be sold or disposed of in the manner prescribed by law for the sale and disposition of surplus property." This section recognizes that situations may change, and that condemned property may not always be used for the purpose that gave rise to the original condemnation proceeding. When a town condemns land for some public use, there is always a potential that unforseen (though perhaps foreseeable) events will frustrate that use. To require *certainty* that the land condemned will be put to the intended public use would be to doom to failure most such proceedings at their conception. When a town in good faith initiates condemnation proceedings, for a public use and in accord with legal requirements, the fact that some obstacle may potentially derail the intended use will not defeat that purpose. Here the Town properly initiated condemnation proceedings for the public purpose of widening and paving a relevant portion of Bowery Road. Once the land is condemned, plaintiff or the Department of Transportation will be required to follow all relevant statutes and regulations before proceeding with the road improvements. For this reason defendants' second assignment of error fails. Assuming *arguendo*, however, that defendants' second argument does not fail for the above reason, this assignment of error is still without merit for the reasons given below.

Defendants argue that there is no written agreement between the Town and the Department of Transportation to transfer the right of way obtained by the Town. However, the District Engineer testified that the Department of Transportation had appropriated $150,000.00 from its Small Urban Funds to accomplish the widening and paving of Bowery Road and that this was sufficient to complete the project. If Bowery Road is not paved by the Department of Transportation, the Town would still be able to pursue other avenues to complete the project.

Defendants further argue that no environmental impact study has been performed for the Bowery Road project as required by N.C. Gen. Stat. § 113A-4 (report required when a State agency is to expend public money or use public land). They argue that without the completion of the study, which they contend also mandated an archaeological

review under 7 N.C.A.C. 4R.0203 (2004), it was improper for the Town to commence condemnation proceedings. The trial court found that the Town was not a "State Agency" as defined in N.C. Gen. Stat. § 113A-9(9) and was not subject to the provisions of the Environmental Policy Act. Thus the Town has the authority to condemn the land and complete the improvements itself without complying with N.C. Gen. Stat. § 113A-4. In this case it is clear that the intent of the Town was for the Bowery Road widening and paving to be constructed by the Department of Transportation and not by the Town. Assuming the condemned land is transferred to the Department of Transportation to complete the improvements, the provisions of the Environmental Policy Act will be applicable *once the Department of Transportation takes control of the land,* since the Department of Transportation is a "State Agency" as defined by N.C. Gen. Stat. § 113A-9(9).

However, N.C. Gen. Stat. § 113A-11 authorizes each State Agency to adopt rules establishing minimum criteria for the applicability of the Environmental Policy Act for certain actions. In Chapter 2F of Title 19A of the North Carolina Administrative Code, the Department of Transportation established such minimum criteria:

.0102 Minimum Criteria.

The following are established as an indicator of the types and classes of thresholds of activities at and below which environmental documentation under the NCEPA is not required:

(8) Highway or railway modernization by means of the following activities, which involve less than a total of 10 cumulative acres of ground surface previously undisturbed by highway or railway construction, limited to a single project, noncontiguous to any other project making use of this provision:

· (a) resurfacing, restoration or reconstruction;

(b) adding lanes for travel, parking, weaving, turning, or climbing;

(c) correcting substandard curves and intersections;

(d) adding shoulders or minor widening;

It is clear from the record in this case that the total right of way sought (.7 miles in length, 45 feet in width), including the existing right of way, is less than 10 acres, would fall under the "min-

imum criteria" standards set forth above, and absent intervention by the Secretary of Transportation under 19A N.C.A.C. 2F.0103 (2004) no environmental impact study would be required. The obtaining of an environmental impact study was not a prerequisite to the commencement of condemnation proceedings in this matter, even if the Department of Transportation initiated the condemnation proceedings.

For all of the above reasons, defendants' second assignment of error is without merit.

[3] In their third assignment of error, defendants argue that the trial court erred in finding and concluding that plaintiff's actions were lawful and binding when there were violations committed concerning the condemnation resolution. We disagree.

Defendants first argue that the Town Board never properly authorized the condemnation resolution because it never properly adopted the Escrow Agreement, which is an integral part thereof. Defendants base their argument on N.C. Gen. Stat. § 160A-75 (2003) which states that "no ordinance or any action having the effect of any ordinance may be finally adopted on the date on which it is introduced except by an affirmative vote equal to or greater than two thirds of all the actual membership of the council." Without determining if the Town Board complied with the necessary procedures to adopt an ordinance, we find that N.C. Gen. Stat. § 160A-75 does not apply in the instant case because the Escrow Agreement was adopted as a resolution, not an ordinance. Resolutions and ordinances are not the same under North Carolina Law. This distinction:

> is evidenced by the fact that the State's statutes provide that resolutions may be used for such things as fixing the time and place of the Board of Commissioners' regular meetings, initiating an alteration in the structure of the board, and permitting the county manager to appoint officers, employees, and agents without first securing Board approval. These are all administrative matters and are in stark contrast to the express requirements in the Statute that an ordinance is required in order for a county to effect such things, for example, as the restriction of firearms, the prohibition of begging, and the regulation and licensing of trades, occupations, and professions. Moreover, the North Carolina statutes provide for the enforcement of county ordinances by fines and penalties.

*Pittman v. Wilson County*, 839 F.2d 225, 228-29 (4th Cir. N.C. 1988) (citations omitted). "Like a statute, an ordinance is a law binding on all concerned." *Id.* (note 7). The Town Board termed its own actions concerning the Escrow Agreement a "resolution," and defendants provide no evidence tending to show the Town Board was passing an ordinance instead of a resolution. The escrow agreement, like the condemnation authority itself, outline restrictions and authority concerning Town action (the condemnation). It affects only those involved in the instant condemnation, and is not (like the restriction of firearms) binding on the general public. The provisions of N.C. Gen. Stat. § 160A-75 do not apply and the Escrow Agreement was properly authorized.

Defendants next argue that even if plaintiff had the authority to condemn the property at issue to improve Bowery Road under state law, that authority automatically terminated because though the agreement required $400,000.00 be present in the escrow account by 30 September 2001, in fact only $396,450.00 was present in the account on that date. Defendants also argue that the funds in the escrow account were used by the Town for prohibited purposes.

The trial court concluded that defendants were "not parties to the escrow agreement and therefore [did] not have standing to contest its validity." Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter. *Neuse River Foundation, Inc. et al. v. Smithfield Foods, Inc. et al.*, 155 N.C. App. 110, 574 S.E.2d 48 (2002).

Here, the town signed an escrow agreement with contributors which set forth conditions for the condemnation of the properties. Defendants were not parties to that agreement nor were they third-party beneficiaries thereof; consequently, they have no standing to assert a breach of the agreement by the Town. *Meyer v. McCarley & Co.*, 288 N.C. 62, 70, 215 S.E.2d 583, 588 (1975). Any action for the breach of the escrow agreement would have to be brought by a party to the agreement.

Defendants further argue that the Board's condemnation authority never vested because that authorization states that "[i]f the Department of Transportation, *because of its policies*, is unable to condemn the necessary right-of-way, that the Town of Highlands initiate such proceedings." (emphasis added). Defendants contend

**TOWN OF HIGHLANDS v. HENDRICKS**

[164 N.C. App. 474 (2004)]

the Department of Transportation was not prohibited by *statute* from condemning the property, and thus the Town's own provision prevented the Town from initiating the proceedings. Defendants acknowledge that the *policies* of the Department of Transportation Division itself did prevent the Department of Transportation from condemning the property. Thus the Department of Transportation Division, by its own policy, was prohibited from initiating the condemnation, and the Town was authorized under its resolution to initiate the condemnation proceedings.

Defendants finally argue that the condemnation proceedings were initiated prematurely and thus in violation of the Town's authorizing resolution. The authorizing resolution permits the Town to initiate condemnation proceedings if the Department of Transportation is unable to do so. The resolution also provides that the costs of litigation and compensation will be paid out of the escrow fund, and that the escrow fund would terminate if it did not contain $400,000.00 by 30 September 2001. If the escrow fund had failed to hold the required funds by 30 September 2001, the Town could have authorized other means of paying for the litigation costs and compensation of the property owners, or it could have abandoned its intention to proceed with the condemnations. Nowhere in the authorizing resolution does it prescribe when the Town may send notices of the actions. The only limit in the authorizing resolution concerning the initiating of the actions was passed on 19 September 2001 when the Town Board resolved that "no official proceedings [may] be *filed* before October 4 [2001]" (emphasis added). These actions were filed on 4 October 2001. The Town did not act prematurely by sending notices of the actions before 30 September 2001.

This assignment of error is without merit.

AFFIRMED.

Chief Judge MARTIN and Judge LEVINSON concur.